### 46790. BURLESON v. THE STATE.
(384 SE2d 659)

HUNT, Justice.

The trial court ordered a mistrial when one of the jurors stated, during deliberations, she was conscientiously opposed to participating in *any* verdict. Before retrial, the defendant filed his plea of former jeopardy, which the trial court denied. He appeals.

> A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn . . . but before findings were rendered by the trier of facts.

OCGA § 16-1-18 (a) (2). Accord U. S. Const., 5A; 1983 Ga. Const., Art. I, Sec. I, Par. XVIII; *Benton v. Maryland,* 395 U. S. 784 (89 SC 2056, 23 LE2d 707) (1969).

In the midst of the jury's deliberations in Clyde Alvin Burleson's murder trial, the foreperson reported to the court: "We have one juror that is not willing to place any kind of vote on any of the verdicts that you have mentioned to us." In response, the trial court, without addressing the particular juror individually, charged the jury as to its oath and obligation to reach a verdict pursuant to what is generally referred to as the *Allen* charge; he then excused the jury for lunch. Following the lunch recess the jury deliberated for another hour. At that time the court was informed that no change was evident in the recalcitrant juror's attitude. She was then identified by the court and, in the presence of the parties and the other jurors, said:

> Well, I really didn't know which way to vote, because I—all the evidence—I didn't know, vote yes or no. I didn't want to take sides on it. . . . My freedom of conscience—to vote—to come between two people—that would be my freedom or my conscience, and I just don't have a conscience on doing things like that.

The trial court then held the juror in contempt for violation of her oath as a juror, dismissed her, and was about to resume the trial with the remaining eleven jurors[1] when defense counsel interjected "Your Honor, I haven't agreed to that at this point."

COURT: I asked you right there and you said you would.

ADAMS: I said, if all else fails, we would do that.

COURT: Well, all else has failed, Mr. Adams.

ADAMS: Well, your Honor, I would like the record to reflect we requested—

COURT: Do you want to withdraw your agreement?

ADAMS: (NO RESPONSE)

COURT: I'll declare a mistrial, jurors. Have a seat in the audience.

ADAMS: Your Honor, I'd like to get some ruling on my request before you —

COURT: You haven't made any requests.

ADAMS: Your Honor, I asked you to give a charge—

COURT: No, sir, I refuse to do that.

ADAMS: I think that a charge under *Spaulding v. State*, 232 Ga. 411, [414 (207 SE2d 43) (1974), *Allen* charge] is appropriate. . . . I object to the court holding the lady in contempt, particularly in the presence of the rest of the jurors.[2] . . . I object to the mistrial—

COURT: I overruled your motion.

ADAMS: We will waive the 12th juror, if that's the only alternative we have.

COURT: I've overruled your motion. I've declared a mistrial in the case.

The resolution of this case depends upon whether, in declaring a mistrial, the trial court abused its discretion to the extent that a retrial would amount to double jeopardy. Stated another way, was there a manifest necessity for declaring the mistrial?[3]

In *Arizona v. Washington*, 434 U. S. 497 (98 SC 824, 54 LE2d 717) (1978), the United States Supreme Court discussed the doctrine of manifest necessity:

---

[1] This procedure could only be followed, of course, upon the express agreement of the defendant. See *Copeland v. State*, 241 Ga. 370, 371 (245 SE2d 642) (1978).

[2] It seems to us the better practice would be to handle this out of the presence of the other jurors.

[3] In *United States v. Perez*, 22 U. S. (9 Wheat) 579 (79 SC 676, 696, 3 LE 684) (1824), Justice Story explained:

[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated. [Emphasis supplied.]

... [R]etrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. . . .The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant . . .[W]e assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

The question whether that "high degree" has been reached is answered more easily in some kinds of cases than in others. At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. . . . At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. [Footnotes omitted.]

Id. at pp. 505-509. This case is of the latter sort. No prosecutorial misconduct is involved. Compare *Cobb v. State*, 246 Ga. 619, 620 (272 SE2d 296) (1980); *Chatham v. State*, 247 Ga. 95, 96 (274 SE2d 473) (1981).

It is apparent from the exchange between court and counsel and from the hearing on the plea in bar that the defendant was afforded an opportunity to object and to suggest alternatives to the mistrial. See *United States v. Jorn*, 400 U. S. 470, 487 (91 SC 547, 27 LE2d 543) (1971). Refusal to give the *Allen* charge was no abuse of discretion as that charge had already been given.[4] The record does not reveal an agreement by the defendant to proceed with eleven jurors, but it is obvious that some off-the-record consideration was given this alternative to a mistrial. It is likewise obvious that the trial court labored under the impression that the defendant had in fact so agreed. Burleson's equivocation, when confronted by the court as to this alternative, left the court no choice. Manifest necessity then existed for

---

[4] We previously mentioned that the trial court, preceding the lunch break, had charged the jury on its sworn duty to reach a verdict. Since the identified juror was unwilling, not unable, to reach a verdict the *Allen* charge, if not inapplicable to the circumstances, would have been of little or no effect.

a mistrial. The defendant's subsequent protestations did not alter this.[5]

With respect to whether the rejection of alternatives amounts to abuse of discretion, it was stated in the case of *Cherry v. Director, State Bd. of Corrections*, 635 F2d 414, 418-19 (5th Cir. 1981):

> A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though "[i]n a strict, literal sense, the mistrial [is] not 'necessary.' " [*Arizona v. Washington*, supra, 434 U. S.] at 511, 98 S.Ct. at 833. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. [Cits.] Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights. . . .

The declaration of mistrial, under these circumstances, will not bar a retrial. The trial court properly denied the plea of former jeopardy.

*Judgment affirmed. All the Justices concur, except Smith, J., not participating.*

DECIDED OCTOBER 25, 1989.

*Don E. Snow*, for appellant.

*W. Fletcher Sams, District Attorney, J. David Fowler, Assistant District Attorney*, for appellee.

---

[5] We ascribe to Burleson's counsel no improper motive or conduct. We recognize the extent of the problem confronting counsel under these circumstances. It is, to be sure, a difficult choice.