## A98A0305. COOKE v. THE STATE.
(496 SE2d 337)

Birdsong, Presiding Judge.

James Randolph Cooke appeals from an order denying his motion for discharge and acquittal and plea in bar based on double jeopardy grounds.

Appellant was brought to trial for two counts of DUI; a jury was impaneled and sworn. A videotape was made of appellant's arrest; this tape in part showed appellant's fiance, who was a passenger in appellant's vehicle, in an apparent intoxicated condition. Prior to trial, the trial court granted appellant's motion in limine in part to "exclude anything on the videotape past whatever point there is where the conduct of [appellant's] fiance becomes the essential focal point of this videotape as opposed to anything the [appellant] did." The trial court made this ruling to preclude getting "into a situation of vicarious criminal responsibility and having that assessed against [appellant] for something that his fiance may have done." During trial, the State showed a videotape of the incident investigation. During the viewing, the trial judge was seated two chairs to the left of the bailiff and an alternate juror was seated immediately on the other side of the bailiff. When the tape showed appellant's fiance prior to appellant's arrest, the bailiff remarked, "she sure looks intoxicated." The trial court overheard this comment and declared a mistrial sua sponte. Appellant subsequently was brought to trial and entered a motion for discharge and acquittal. In denying the motion the trial court pertinently held: "[T]he Court granted [a mistrial] sua sponte based on information immediately available to the Court for conduct occurring in the direct presence of the Court. During discussions outside the presence of the jury, Counsel for the parties were informed that a mistrial would be declared based on what had transpired in Court. Counsel for Defendant asked only that, if a mistrial were declared, the same be done with prejudice. Subsequent to the declaring of the mistrial, Counsel for Defendant stated his objection to the mistrial without prejudice for the purpose of perfecting the record." The hearing transcript reveals that after asking the court that any mistrial to be granted be done so with prejudice, appellant's counsel further stated: "And we were all in there when you gave

strict instructions to witnesses not to testify among each other or make any comments. The jurors are not supposed to discuss this amongst each other, and now we've got an officer of the Court who has done this. . . ." The transcript also reveals appellant's mistrial objection was made only after the mistrial had been declared and the jury dismissed. *Held*:

"Once the jury has been impaneled and sworn, jeopardy attaches." *Dotson v. State*, 213 Ga. App. 7, 8 (1) (443 SE2d 650). Once jeopardy attaches, "[i]f a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a 'manifest necessity' for the mistrial." *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483).

"Recognizing the constitutional right of a criminally accused to have his or her trial proceed to an acquittal or conviction once a jury has been impaneled, 'the power of the trial judge to interrupt the proceedings on his own or the prosecutor's motion by declaring a mistrial is subject to stringent limitations. . . . (R)etrial is permissible only if a . . . "manifest necessity" is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances. (Cits.)' " *Reed v. State*, 267 Ga. 482, 483-484 (1) (480 SE2d 27). The decision whether any unauthorized statement, communicated to the jury either individually or as a group, is so prejudicial as to warrant a mistrial is in the discretion of the trial court. *Roberts v. State*, 267 Ga. 669, 674 (8) (482 SE2d 245). "Some of the factors and circumstances to be reviewed in determining whether the trial court abused its discretion in denying the motion for mistrial include the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." Id. Examining the surrounding circumstances in their totality, we are satisfied that a "manifest necessity" existed for the declaration of a mistrial. At the commencement of this trial, defense had exhibited its grave and warranted concern that appellant's fair trial rights might be tainted by the jury's viewing of evidence revealing that appellant's passenger, a female companion, was laboring under the influence of alcohol. Equally concerned, the trial court attempted to fashion a balanced remedy which allowed the government to present that relevant evidence which was not substantially outweighed by its potential for prejudice of the jury. The statement at issue brought attention to the very type of collateral evidence that the trial court was concerned might bring irreparable harm to appellant and influence the jury to convict him based on a guilt by association analysis. To compound the error, the remark was made during the course of the proceedings in the presence of the jury

by the bailiff — an officer of the court designated, by virtue of his courtroom duties, as an unbiased administrative attendant who has charge of a court session in the manner of keeping order, custody of the jury, and custody of prisoners while in the court. See generally Black's Law Dictionary (5th ed.). The nature of the bailiff's position served to heighten the prejudicial potential his intemperate remark could have on the jury. In fact, OCGA § 15-12-140 (oath of bailiffs) pertinently provides: "You shall make no communication with [the jury] yourself nor permit anyone to communicate with them, except by leave of the court." Further, the appellate record fails to reveal adequately the volume or inflection with which the bailiff's remark was made, the facial reaction of any juror who was in a position to hear the remark, or the expression on the face of the bailiff when he made the remark. The trial judge, being present in the courtroom, was better equipped than this appellate court to observe and gauge the impact of some or all of these important factors. As an appellate court, we are compelled to give the trial court's ruling great deference, as the court was charged with preservation of the accused's right of fair trial and was in a far better position to determine the prejudicial impact which the bailiff's intemperate remarks could have had on one or more potential jurors. Moreover, as in *Burleson v. State*, 259 Ga. 498, 500 (384 SE2d 659), "[n]o prosecutorial misconduct is involved," and this is a significant factor for appellate consideration. We also note that appellant's counsel did not immediately object to the trial court's announcement of its intent to grant a mistrial; neither did appellate counsel propose any lesser alternative which would serve to negate the existing prejudice. These latter factors support tacitly the trial court's assessment of the degree of harm flowing from the bailiff's conduct.

The record discloses that the trial court elected not to reopen voir dire to determine the scope and degree of impact which the remark may have had on individual jurors. While such a procedure can in certain situations constitute a wise practice, "[w]hen a trial court determines that a juror has received an improper communication it may, but is not required to, determine whether the communication had in fact prejudiced the juror before granting a mistrial." *Reed*, supra at 484 (1). In fact, polling the jury can pose a distinct risk if the trial court is considering the giving of a cautionary instruction, for the very act of jury polling can spread the scope of the unauthorized remark and increase the degree of its prejudicial impact. Moreover, discovery by the trial court of the harmful communication "in itself may support a finding that there was manifest necessity to grant a mistrial" (id.); the case at bar poses such a situation.

Finally, a "trial court's decision to reject alternatives to granting a mistrial is given great deference, and the availability of another

alternative without more does not mean the mistrial was not necessary." Id. In this case, "It is apparent from the exchange between court and counsel . . . that the defendant was afforded an opportunity to object and to suggest alternatives to the mistrial." *Burleson*, supra at 500. In fact, during the out-of-court hearing prior to the mistrial declaration, appellant's counsel affirmatively voiced his view that any mistrial should be declared with prejudice. The trial judge in the case at bar interjected himself sua sponte to protect the fair trial rights of the accused, rather than the fair trial rights of the State. We recognize that, under the totality of the attendant circumstances, a situation is here created whereby reasonable judges could differ as to the type of disposition required to protect appellant's fair trial rights. "A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights." (Citations and punctuation omitted.) *Burleson*, supra at 501. This record in its totality reveals that the trial court both at the motion in limine hearing and later at the out-of-court hearing on the mistrial motion carefully analyzed the prejudicial potential of the passenger's on-the-scene conduct and the seriousness of the bailiff's intemperate expression of opinion in the jury's presence regarding the state of the passenger's sobriety. That the trial court failed to state affirmatively on the record the alternatives, if any, it had considered and rejected in its analysis of the need for mistrial, does not, standing alone, render the trial court's declaration of a mistrial so unwarranted, under the existing circumstances, as to preclude appellant's retrial on grounds of double jeopardy.

Under the totality of the circumstances, the trial court did not err in denying appellant's motion for discharge and acquittal and plea in bar.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JANUARY 23, 1998 

*Jamie S. Wingler*, for appellant.

*Keith C. Martin, Solicitor, Evelyn Proctor, Assistant Solicitor*, for appellee.