S03A0935. TUBBS v. THE STATE.
(583 SE2d 853)

CARLEY, Justice.

The grand jury indicted Keiotta Tubbs for two counts of malice murder and four counts of felony murder involving two victims. The District Attorney is seeking the death penalty. Tubbs opted for discovery pursuant to OCGA § 17-16-2 (a) and, in response to the State's demand, gave written notice of his intention to offer a defense of alibi, listing only two witnesses. See OCGA § 17-16-5 (a). According to the notice submitted to the prosecution, Tubbs was traveling with

the two witnesses in Louisiana on May 12, 1998 between 9:00 and 9:30 p.m., the time that the offense allegedly occurred in Midway, Georgia. The case proceeded to trial and a jury was selected and sworn. During opening statement, defense counsel began listing several additional witnesses who allegedly saw Tubbs in Louisiana in May, two of whom saw him on May 12 in the late afternoon. The trial court granted a continuance on the State's motion, and thereafter declared a mistrial sua sponte and ordered Tubbs to disclose any witnesses who would testify as to his whereabouts on May 11, 12, or 13, 1998. In its order, the trial court found that Tubbs did not comply with OCGA § 17-16-5, that placing him in Louisiana late in the afternoon of May 12 is an alibi, that the two additional witnesses would place Tubbs in Louisiana as late as 10:30 p.m. on that date, that the improper conduct of defense counsel was responsible for any delay or mistrial, and that there was so strong a necessity for mistrial that a manifest injustice would occur otherwise. Thereafter, Tubbs filed a plea in bar, which the trial court overruled based upon the findings in its previous order granting the continuance and declaring a mistrial. Tubbs directly appeals pursuant to *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982).

1. Tubbs contends that the trial court erred in finding that he failed to comply with OCGA § 17-16-5. "Upon a demand by the state, OCGA § 17-16-5 (a) requires the defendant to disclose in writing an intention to rely upon an alibi defense." *White v. State*, 271 Ga. 130-131 (1) (518 SE2d 113) (1999).

> Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names, addresses, dates of birth, and telephone numbers of the witnesses, if known to the defendant, upon whom the defendant intends to rely to establish such alibi unless previously supplied.

OCGA § 17-16-5 (a).

Contrary to Tubbs' argument, a defendant does not comply with the statute by listing only those witnesses who will testify as to the defendant's location at the specific time of the alleged offense. Instead, the statute prescribes notice in two parts: first, a statement of the alibi defense and, second, a list of witnesses in support thereof. Only the former refers to the particular time of the alleged offense. The latter portion is concerned with "witnesses who will testify *regarding* the alibi defense." (Emphasis supplied.) *White v. State*, supra at 131 (2). Even if the witnesses do not testify that the defendant was at a certain location at the exact time of the offense, their testimony may still support such a finding. In that instance, they do

come within the parameters of the statute because they are witnesses "upon whom the defendant intends to rely to establish such alibi. . . ." OCGA § 17-16-5 (a). Requiring specific disclosure of all witnesses upon whom the defense plans to rely in establishing an alibi defense "furthers the act's purpose of preventing surprise and promoting fairness." *White v. State*, supra at 131 (2). A review of the transcript reveals that Tubbs' counsel clearly knew that some of the witnesses not listed in the notice would testify that Tubbs was in a specific location in another state at a time which would make it impossible for him to be at the crime scene at the time of the murders.

Furthermore, Tubbs may not utilize his general witness list as a substitute for compliance with OCGA § 17-16-5. *White v. State*, supra at 131 (2); *Hayes v. State*, 249 Ga. App. 857, 862 (4) (549 SE2d 813) (2001). Tubbs also relies on subsection (c) of OCGA § 17-16-5, which allows supplemental notice under certain circumstances. However, that portion of the statute applies only where, unlike here, a party does not learn of the existence and identity of an additional alibi witness until after the statutory deadline to give notice passes.

Accordingly, the trial court correctly found that Tubbs' alibi notice did not comply with OCGA § 17-16-5.

2. Remedies for failure to comply with OCGA § 17-16-5 are found in OCGA § 17-16-6. *White v. State*, supra at 131 (3). Thus, if the defendant has violated the requirements of OCGA § 17-16-5 (a) by failing to disclose the identity of an alibi witness, the court may order the defendant to permit interview of the witness, "grant a continuance, *or*, upon a showing of prejudice and bad faith, prohibit the defendant from . . . presenting the witness not disclosed, *or* may enter such other order as it deems just under the circumstances." (Emphasis supplied.) OCGA § 17-16-6. Tubbs urges that the remedy of a mistrial is not available in the absence of a showing of bad faith and prejudice. Under the disjunctive language of the statute, however, such a showing is necessary only to justify an exclusion of the defendant's alibi evidence. That exclusionary remedy, along with its limitation to instances of prejudice and bad faith, is separate from the trial court's general authority to enter such other orders as it deems just. See *Romero v. State*, 247 Ga. App. 724, 725 (545 SE2d 103) (2001). The final general clause of OCGA § 17-16-6 is part of a legislative scheme which avoids a rigid formulation of the remedy for failure to comply with discovery mandates. *Romero v. State*, supra at 725. Therefore, even if there is no showing of bad faith and prejudice, the trial court may declare a mistrial upon a determination that it is just under the circumstances.

3. The trial court's ruling regarding a remedy under OCGA § 17-16-6, including a decision to grant a mistrial, is generally subject to

review for an abuse of discretion. See *White v. State*, supra at 131 (3). Tubbs contends, however, that the trial court's sua sponte grant of a mistrial violated his right against double jeopardy and did not meet the constitutional standard of "manifest necessity."

"[I]t is true that the defendant has a valuable right to be tried by the original impaneled jury. But that right is not paramount to the state's equal right to a fair trial." *Putnam v. State*, 245 Ga. App. 95, 97 (537 SE2d 384) (2000). The existence of manifest necessity is determined by weighing the rights of both parties in light of the totality of the surrounding circumstances. *Putnam v. State*, supra at 96, 97.

> Manifest necessity exists when the accused's right to have the trial completed by a particular tribunal is subordinate to " 'the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.' " [Cit.]

*Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997). "Manifest necessity can exist for reasons deemed compelling by the trial court, especially where ' " 'the ends of substantial justice cannot be attained without discontinuing the trial. . . .' (Cit.)" (Cit.)' [Cit.]" *Pleas v. State*, 268 Ga. 889, 890 (2) (495 SE2d 4) (1998). The Supreme Court of the United States "in *Arizona v. Washington*, 434 U. S. 497 (98 SC 824, 54 LE2d 717) (1978), held that a trial court's judgment about whether there was manifest necessity to grant a mistrial is entitled to great deference." *Putnam v. State*, supra at 96. Under OCGA § 16-1-8 as well, "the trial court's decision to grant a mistrial and reject lesser alternatives is entitled to great deference. [Cits.]" *Putnam v. State*, supra at 96.

> "A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though '(i)n a strict, literal sense, the mistrial (is) not "necessary." ' [Cit.] This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. (Cits.) Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights. . . ."

*Burleson v. State*, 259 Ga. 498, 501 (384 SE2d 659) (1989). "Further, it is not dispositive that the trial court made the decision sua sponte. [Cit.]" *Putnam v. State*, supra at 97. Where, as here, jeopardy has

attached, but "there is no prosecutorial misconduct, the trial court has broad discretion in deciding whether to grant a mistrial. [Cits.]" *Laster v. State*, supra at 173 (1).

> The trial court has a duty to ensure that all parties have a fair trial and has the authority to grant a mistrial where injustice is caused to either party in a criminal case and is especially empowered to avoid the absurdity of a defendant benefitting from the prejudicial error he created. [Cit.]

*Pleas v. State*, supra at 891 (2).

> "Both the defendant and the state are entitled to a fair trial designed to end in a just judgment. [Cit.]. . . . The trial court is vested with as much authority to grant a mistrial when an injustice occurs to the state as when it occurs to the defendant. [Cit.]" [Cit.]

*Putnam v. State*, supra at 97.

The trial court clearly considered all of the alternatives. It steadfastly refused the most drastic remedy of excluding testimony supporting Tubbs' sole defense, but it was equally determined to grant at least a continuance and not to deny the State an ample opportunity to interview all alibi witnesses and fully to explore and investigate their expected testimony. After the prosecutor interviewed one unlisted witness during a recess, it became apparent that the testimony of her and her son, whose trip from California for the trial had been delayed, would place Tubbs in Louisiana quite late and possibly at the very time the alleged offenses occurred. Contrary to Tubbs' assertion, the transcript shows that defense counsel had an adequate opportunity to oppose the remedy of a mistrial since, before discharging the jury, the trial court informed the parties that it was going to dismiss the jury, to give the district attorney the opportunity to interview any of the witnesses, and to set a status conference for three weeks later. The trial court's finding of a manifest necessity for a mistrial was based on its concern that not only the two additional witnesses, but also others among the 24 Louisiana residents on the general witness list, would support the alibi defense by testifying that Tubbs was in Louisiana at time periods so close to the actual time of the alleged offenses that the trier of fact could infer that it was virtually impossible for him to be present when the crimes were committed.

When defense counsel mentions evidence in opening statement despite having failed to give a required notice or make a preliminary showing, the trial court does not abuse its discretion in granting a mistrial. *Laster v. State*, supra at 174 (2), 175 (3). "Under these cir-

cumstances, the public's interest in granting the state one fair opportunity to present evidence to an impartial jury outweighs the accused's right to have his trial completed before a particular jury." *Laster v. State*, supra at 175 (3). "Accordingly, . . . in this case, declaration of a mistrial was not an abuse of discretion and retrial is not barred by double jeopardy. [Cits.]" *Pleas v. State*, supra at 891 (2).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 10, 2003.

C. *Nathaniel Merritt, Lloyd D. Murray, Therese M. Day*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Lewis M. Groover, Jr., Assistant District Attorney*, for appellee.