A07A1589. McGEE v. THE STATE.
(652 SE2d 822)

RUFFIN, Judge.

After a jury had been impaneled to try Anthony McGee for driving under the influence, the trial court sua sponte granted a mistrial. McGee moved for discharge and acquittal, arguing that any subsequent trial was barred by double jeopardy. The trial court

---

[13] *Johnson v. State,* 280 Ga. App. 341, 344 (3) (d) (634 SE2d 134) (2006).
[14] See id. at 344-345.

denied the motion, and this appeal followed. Because we agree that the trial court erred in declaring a mistrial before considering less drastic alternatives, we reverse.

The relevant facts demonstrate that McGee was arrested and charged with two counts of driving under the influence. On Monday, February 12, 2007, a jury was impaneled and sworn for McGee's trial, which was scheduled to begin on Wednesday, February 14, 2007. However, late in the day on Tuesday, the trial judge conducted a conference call with McGee's lawyer and the prosecutor, informing them that no courtroom was available for the trial. According to McGee's counsel, the judge then told both attorneys he "desire[d] to declare a mistrial if the case could not be worked out to a plea." He then asked if counsel "had anything to say about it," and McGee's attorney objected, announcing that he was ready to try the case.[1] There is no evidence that any alternatives to mistrial were discussed.[2] Nonetheless, the trial court declared a mistrial. McGee then moved for discharge and acquittal. The trial court conducted a hearing on the motion, at which time McGee proffered evidence that a mistrial was unnecessary because a courtroom became available Wednesday afternoon and two courtrooms were available on Thursday after 10:00 a.m. Notwithstanding this testimony, the trial court denied the motion, finding that the unavailability of a courtroom made conducting the trial impossible.

McGee appealed the trial court's ruling, arguing that the trial court erred: (1) to the extent it found it was physically impossible to try him; (2) in ruling, over McGee's objection, that manifest necessity required a mistrial be granted; (3) by ordering a mistrial without giving McGee an opportunity to be present at a critical stage in the proceedings; and (4) by declaring a mistrial without having any facts or evidence to support its sua sponte decision to declare a mistrial.

1. Once a jury has been impaneled and sworn, a defendant has a constitutional right under the Double Jeopardy Clause to be tried by that jury.[3] This right should not be abridged lightly.[4] And although a trial court has discretion in determining whether a mistrial should be

---

[1] Although the State argues that McGee's attorney acquiesced to the mistrial, McGee's attorney testified that he objected and, in its order, the trial court expressly found that McGee objected.

[2] In its brief, the State asserts that "the Judge allowed both sides to give their positions and considered whether any alternatives existed." This assertion is simply not supported by the record.

[3] See *Perez v. State*, 266 Ga. App. 82, 84 (596 SE2d 191) (2004).

[4] See *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998).

granted, an appellate court has a corresponding duty to satisfy itself "that the trial judge exercised 'sound discretion' in declaring [such] mistrial."[5]

"A trial is improperly terminated if there was no manifest necessity for declaring a mistrial."[6] And manifest necessity requires "urgent circumstances."[7] As we have held,

> [w]hen determining whether such urgency is present, a trial court must scrupulously exercise its discretion in weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances. It should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, *with a keen eye toward other, less drastic, alternatives,* calling for a recess if necessary and feasible to guard against hasty mistakes.[8]

Here, there simply is no evidence that the trial court considered any alternative to declaring a mistrial for what, essentially, was a scheduling error. Rather, the evidence shows that the trial court presented the defendant with only two options: plead guilty or a mistrial would be declared. Moreover, the facts of this case do not raise the inference that urgent circumstances existed. There is no suggestion that the courtrooms were unavailable due to lengthy trials. Indeed, the record shows that the courtroom that was unavailable on Wednesday morning became available on Wednesday afternoon and that courtrooms were available after 10:00 a.m. on Thursday.[9] And given that the case involved driving under the influence, there is minimal danger that the jurors would have been exposed to any prejudicial information during a continuance. Under these circumstances, where the record is devoid of evidence establishing urgent circumstances, the court abused its discretion in declaring a mistrial without first considering alternatives that would have pre-

---

[5] *Spearman v. State,* 278 Ga. 327, 330 (2) (602 SE2d 568) (2004).

[6] *Jefferson v. State,* 224 Ga. App. 8, 9 (479 SE2d 406) (1996).

[7] (Punctuation omitted.) Id.

[8] (Citations and punctuation omitted; emphasis supplied.) Id.

[9] Although McGee's attorney testified that the courtroom was available after 12:30 p.m., the court took judicial notice in its order that the courtroom would not have been available until 3:30 p.m.

served McGee's valuable right to be tried by the originally impaneled jury.[10]

From a procedural standpoint, there is a question as to who bears the burden of suggesting alternatives. Here, there is no evidence that either the defense or the State suggested any alternatives to the proposed mistrial.[11] The State argues that it is the defendant who bears the burden of presenting alternatives to mistrial. Our case law does not provide a clear answer to this question.[12] But where, as here, the trial court sua sponte grants a mistrial without giving the parties advance notice of its intent, it is fundamentally unfair to penalize the defendant — or defense counsel — for not immediately countering with alternatives to the drastic action of mistrial. Thus, we conclude that the trial court abused its discretion in declaring a mistrial — and abridging McGee's constitutional right to be tried by the originally impaneled jury — without first considering less drastic alternatives.[13]

The dissent asserts that our ruling in this case stems from a simple disagreement "with the court's discretionary decision." This assertion misses the mark as it is the *procedure* we find flawed, not the result.[14] Our holding in this case does not categorically require a trial court to grant a continuance under similar circumstances, merely that the court consider it as an alternative to declaring a mistrial. Here, the record reveals that the trial court told defense counsel that if McGee did not plead guilty, he would declare a mistrial.[15] It is this type of truncated decision-making process — undertaken with little or no heed to McGee's constitutional rights — that constitutes the abuse of discretion.

2. In view of this ruling, we need not address McGee's remaining enumerations of error.

---

[10] See *Jefferson*, supra at 10; *Bradfield v. State*, 211 Ga. App. 318, 320 (439 SE2d 100) (1993).

[11] Compare *Jefferson*, supra at 9; *Spearman*, supra.

[12] See *Jefferson*, supra (State suggested continuance); *Spearman*, supra (State proposed several "options" to mistrial, but defendant suggested no alternative); *Bradfield*, supra (where trial "court did not afford the defense any opportunity to suggest alternatives short of a mistrial").

[13] See *Jefferson*, supra.

[14] See, e.g., *Kim v. Walls*, 275 Ga. 177, 179 (563 SE2d 847) (2002) (trial court abused its discretion in truncating inquiry into juror bias).

[15] We are also troubled by the trial court's decision to conduct this conversation outside the presence of the defendant. See *Buckner v. State*, 253 Ga. App. 294, 296 (2) (558 SE2d 823) (2002). (" '[A] defendant on trial must be present when the court takes any action materially affecting his case.' "); *Bagwell v. State*, 129 Ga. 170 (1) (58 SE 650) (1907) (defendant had right to be present when mistrial declared). Indeed, this serves as the basis of McGee's third enumeration of error. In view of our holding, we need not address this argument on appeal.

*Judgment reversed. Barnes, C. J., Andrews, P. J., Smith, P. J.,
and Miller and Bernes, JJ., concur. Blackburn, P. J., dissents.*

BLACKBURN, Presiding Judge, dissenting.

I respectfully dissent. The crux of this case is whether we should uphold a trial court's factual finding, set forth in a detailed order, that it was physically impossible to continue with a defendant's trial due to the unavailability of a courtroom. Because some evidence showed that a courtroom was unavailable (indeed, one of the allegedly "available" courtrooms was assigned to a superior court and was not available for use by this state court), we as an appellate court should affirm that finding, even though with 20/20 hindsight it would appear that a courtroom may have become available sooner for a few hours here and a few hours there than was apparent to the trial court at the time it made its factual determination. More importantly, we should not hold that a trial court abused its discretion in deciding not to keep the parties, witnesses, and jurors on indefinite hold until a court opened up. Based on the well-supported factual finding of no courtroom being available, the trial court did not abuse its discretion in finding manifest necessity to declare a mistrial; accordingly, double jeopardy protections did not bar a new trial.[16]

It is clear under both state and federal constitutional law that "[w]hen the trial court sua sponte interrupts the proceedings to declare a mistrial without the defendant's consent or over his objection, a retrial is nevertheless permissible if a manifest necessity existed for declaring the mistrial." *Perez v. State*.[17] See *Abdi v. State*;[18] *Illinois v. Somerville*.[19] Manifest necessity is shown when "[t]he trial court finds that the termination is necessary because [i]t is physically impossible to proceed with the trial." OCGA § 16-1-8 (e) (2) (A).

In its order denying the bar of double jeopardy, the court carefully sets forth the evidence underlying its factual determination that it was physically impossible to try the case. At the time the court conferred with the parties about the availability of a courtroom, the undisputed evidence before the court was that neither of the two courtrooms would be available on the next day (Wednesday) that McGee's trial was scheduled to begin because (i) over 200 arraignments were to be conducted in one courtroom and (ii) a trial was unexpectedly continuing into its third day in the other. A third

---

[16] While the trial court may have avoided the problem of jeopardy by not swearing in the jury until the morning of trial, that is not the test. Although such may be a better practice, it is not required.

[17] *Perez v. State*, 266 Ga. App. 82, 84 (596 SE2d 191) (2004).

[18] *Abdi v. State*, 249 Ga. 827-828 (2) (294 SE2d 506) (1982).

[19] *Illinois v. Somerville*, 410 U. S. 458, 461 (II) (93 SC 1066, 35 LE2d 425) (1973).

courtroom that McGee claimed was also available was in fact assigned to the superior court and was not available for use by the state court here. On the following day (Thursday), both state court courtrooms were scheduled for sentencing hearings. Based on this evidence, the trial court invited the parties to comment; neither party chose to submit any contrary evidence or to suggest any alternatives to a mistrial. Therefore, the court clearly had evidence on which to make a factual finding that it was physically impossible to try the case and accordingly had grounds for exercising its broad discretion to declare a mistrial.

The majority nevertheless raises three counter-arguments, none of which has merit. First, the majority opines that the trial court abused its discretion by declaring a mistrial without providing the parties *an opportunity* to present alternatives; this, however, is contradicted by the testimony of McGee's counsel, who acknowledged that during the teleconference the day before the trial was to begin, the court asked whether either side had anything to say regarding the court's desire to declare a mistrial. See *Putnam v. State*[20] (defendant had opportunity in chambers to propose alternatives to mistrial).

Second, the majority states that there was evidence that a courtroom became available on the Wednesday afternoon (February 14) after all; the majority bases this conclusion on hindsight testimony from McGee's trial counsel, who at the March 2 hearing testified that the evidence and closing arguments in the continuing trial in one of the courtrooms in fact ended up completing on that Wednesday around noon, freeing up the courtroom when the jury retired for deliberations. This counsel also testified that the Thursday sentencing hearings ended up completing during the morning hours, thus freeing up both courtrooms for a trial on Thursday afternoon. Beyond the fact that this after-the-fact testimony would imply that a trial court should be able to predict the future course as to the length of trials and hearings, this testimony does not diminish the fact that when the trial court made its factual determination on Tuesday about courtroom availability, some evidence supported its finding that a courtroom was unavailable. *Any evidence suffices to sustain a factual finding by the court.* See *Tate v. State.*[21]

Nor does the majority's approach address the disruption to the court, to counsel, to the parties, to the witnesses, and to the jurors that would have been caused by waiting around to see if a courtroom happened to open up and by then suddenly sandwiching in McGee's trial for an unpredictable few hours on Wednesday and a few hours on

---

[20] *Putnam v. State*, 245 Ga. App. 95, 98 (537 SE2d 384) (2000).
[21] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Thursday as a courtroom became available. The administrative problems associated with getting the jurors, witnesses, and parties to the courtroom with only an hour or so notice would have been monumentally unworkable. Faced with such circumstances, we should not say that the trial court abused its discretion in declaring a mistrial based on its factual finding of courtroom unavailability and we have no discretion to make factual determinations. See *Tubbs v. State*[22] (when there is no prosecutorial misconduct, the trial court has broad discretion in deciding whether to grant a mistrial).

Third, citing *Jefferson v. State*[23] (mistrial improperly declared where trial court did not consider less drastic alternatives on the record), the majority holds that the trial court failed to consider less drastic alternatives to a mistrial because such alternatives were not *expressly set forth* in the record or in its order declaring a mistrial. Nothing requires the trial court to do so. In light of the undisputed evidence of courtroom unavailability, what less drastic alternatives were available? None is reflected in the record. Indeed, neither McGee nor the majority have named those alternatives, but simply imply that a continuance of some sort must have been available; however, no continuance was requested (indeed, during the hearing McGee insisted that the trial should go forward immediately with no continuance), and any such continuance would in any case have placed the jurors on indefinite call over several days until the court could possibly find a courtroom. The trial court has specifically found none was available, and McGee's testimony erroneously assumed the superior courtroom was open to the state court.

In any case, the rationale and holding of *Jefferson* (decided in 1996) are fundamentally flawed on at least two fronts. First, *Jefferson*'s claim that the trial court there did not consider the less drastic alternative of a continuance is belied by its statement of facts, in which it notes that the trial court "declined to grant a continuance at the State's urging and over Jefferson's strenuous objection." Supra, 224 Ga. App. at 9. The record could not be more clear that the trial court in *Jefferson* did the very thing of which it was accused of not doing.

Second, *Jefferson* did indeed reverse a finding of manifest necessity because (it claimed) the trial court failed *on the record* to expressly set forth all less drastic alternatives to a mistrial. Even assuming the underlying factual premise to be true, we should not agree with the rationale that unless otherwise expressly indicated on the record, we will *presume* that a trial court did not consider less

---

[22] *Tubbs v. State*, 276 Ga. 751, 754-755 (3) (583 SE2d 853) (2003).
[23] *Jefferson v. State*, 224 Ga. App. 8 (479 SE2d 406) (1996).

drastic alternatives. As stated in *Cooke v. State*,[24] "[t]hat the trial court failed to state affirmatively on the record the alternatives, if any, it had considered and rejected in its analysis of the need for mistrial, does not, standing alone, render the trial court's declaration of a mistrial so unwarranted, under the existing circumstances, as to preclude appellant's retrial on grounds of double jeopardy." See *Arizona v. Washington*[25] ("[t]he state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed . . . to articulate on the record all the factors which informed the deliberate exercise of his discretion").

Indeed, in the 2000 whole court decision of *Putnam*, supra, 245 Ga. App. at 96-98, we firmly rejected the requirement that the trial court expressly set forth all its rationale and the listing of less drastic alternatives before we would uphold its decision to declare a mistrial in a double jeopardy context. In *Putnam*, the trial court decided that newspaper coverage of the trial required a mistrial. We held:

> Although the better practice in the circumstances presented here would have been to question the jury about its media exposure, the trial judge was in the best position to determine the possible prejudicial impact of the newspaper article in connection with the setting in which the trial was taking place. Further, no prosecutorial misconduct is involved, and this is a significant factor for appellate consideration.

(Citation and punctuation omitted.) Id. at 97. *Putnam* then went on to hold that the trial court's failure to expressly list this and other alternative remedies on the record as matters considered and rejected did not render that decision reversible (despite the dissent's position in *Putnam*). We explained that "[a]lthough the trial judge should also explain on the record that he or she considered and rejected alternative remedies, the fact that the lower court failed to do so here does not, standing alone, render his determination so unwarranted as to preclude the defendant's retrial on grounds of former jeopardy." (Punctuation omitted.) Id. at 97-98. See *Terrell v. State*.[26] Indeed, reversing a trial court for failing to expound on each potential alternative and to document each thought process in a complex decision is contrary to the fundamental concept that we presume the regularity of proceedings and therefore presume that a court considered all appropriate alternatives when faced with a discretionary

---

[24] *Cooke v. State*, 230 Ga. App. 326, 329 (496 SE2d 337) (1998).

[25] *Arizona v. Washington*, 434 U. S. 497, 517 (IV) (98 SC 824, 54 LE2d 717) (1978).

[26] *Terrell v. State*, 236 Ga. App. 163, 165 (511 SE2d 555) (1999).

decision. See *Ward v. Swartz*.[27] See also *Martin v. Martin*[28] (in the absence of contrary evidence, we presume court considered defendant's defense); *Putnam*, supra, 245 Ga. App. at 97 (" '[d]eference to the judge's sound discretion also precludes a reviewing court from assuming, *in the absence of record evidence*, that the trial judge deprived a defendant of constitutional rights' ") (emphasis supplied).

Finally, *Jefferson* aside, it would appear that the underlying focus of McGee's and the majority's position is that they simply disagree with the court's discretionary decision; they would have chosen the alternative of sandwiching in the trial between the various proceedings in the courtrooms rather than declaring a mistrial. But as an appellate court, we are not allowed to dictate decisions to the trial court when faced with discretionary alternatives. Indeed, *Tubbs*, supra, 276 Ga. at 754 (3), held:

> A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.

(Citations and punctuation omitted.) See *Spearman v. State*.[29]

The majority inaccurately implies that intending to coerce a plea, the trial court was threatening to declare a mistrial if McGee chose to go to trial. The actual context shows differently: the trial court told the parties of the conflicting events in the courtrooms over the upcoming days, determined that there would be no courtroom available for this trial and that therefore a mistrial was most likely (unless the parties chose to work out a plea), advised the parties of such, asked for comments (with neither party then proposing an alternative nor requesting a continuance), heard McGee respond that he had only a general objection to the case not being tried the next day, and then ruled that the court accordingly had no choice but to declare a mistrial. This ruling was reasonable and within the court's discretion, as no alternatives to a mistrial were proposed or apparent

---

[27] *Ward v. Swartz*, 285 Ga. App. 788, 789 (1) (648 SE2d 114) (2007).

[28] *Martin v. Martin*, 267 Ga. App. 596, 597 (1) (600 SE2d 682) (2004).

[29] *Spearman v. State*, 278 Ga. 327, 330-331 (2) (602 SE2d 568) (2004).

(unless of course a plea was entered, which would have obviated a trial or a mistrial). It was not a threat to force a plea; there was simply no other choice.

In summary, given the absence of a venue in which to try the case on the date the trial was scheduled to begin, the trial court's finding that it was physically impossible for McGee's trial to proceed did not constitute an abuse of the broad discretion to declare a mistrial afforded to trial courts in circumstances where there has been no prosecutorial misconduct. Cf. *Tubbs*, supra, 276 Ga. at 756 (3); *Laster v. State*;[30] *Putnam*, supra, 245 Ga. App. at 98. For these reasons, I respectfully dissent. I would affirm the trial court's decision.

DECIDED SEPTEMBER 26, 2007 —
RECONSIDERATION DENIED OCTOBER 17, 2007 ▮▮▮▮▮▮▮▮▮

*Bryan M. Gratham*, for appellant.
*Harold V. Jones II, Solicitor-General, Fasha S. Lewis, Assistant Solicitor-General*, for appellee.

---

[30] *Laster v. State*, 268 Ga. 172, 175 (3) (486 SE2d 153) (1997).