**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**April 24, 2020**

# In the Court of Appeals of Georgia

A20A0312. CHISHOLM v. THE STATE.                    DO-012 C

DOYLE, Presiding Judge.

Jonathan Raymond Chisholm appeals from the denial of his plea in bar of former jeopardy, arguing that the trial court erred by granting the State's motion for mistrial on the basis that the defense attorney's cross-examination of the victim violated OCGA § 24-4-412 ("the Rape Shield Statute"). For the reasons that follow, we affirm.

"[T]he standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion."[1]

---

[1] (Punctuation omitted.) *Cotman v. State*, 342 Ga. App. 569, 589 (4) (804 SE2d 672) (2017), quoting *Johns v. State*, 319 Ga. App. 718, 719 (738 SE2d 304) (2013).

Here, the record shows that Chisholm was charged with rape and aggravated sodomy. At trial, Chisholm's attorney argued during his opening statement that the sexual interaction between Chisholm and the victim was consensual. The victim testified that on January 19, 2017, when she was 16 years old, she was walking home in the evening when Chisholm, an adult neighbor, approached her. Chisholm suggested that the two take a shortcut through a ditch-like path, and the victim agreed, despite feeling uncomfortable. Chisholm asked her "a lot of questions," which she answered, but she began to feel apprehensive when he stopped her in a secluded area. The victim testified that Chisholm then kissed her, had her lay on the ground on his shirt, held her down by her wrists so that she couldn't move, covered her mouth with his hand, and penetrated her with his penis against her will.

During cross-examination of the victim, the following colloquy took place:

Q: And while you were on [the street], isn't it while you were walking that things of a sexual nature were first discussed?

A: Yes.

Q: Correct?

A: Yes.

Q: He mentioned — asked if you were a virgin for example. Correct?

2

A: Yes.

Q: And you told him no?

The State immediately objected, and counsel approached the bench. After the trial court noted that they were "getting into rape shield here," defense counsel argued that "[the victim] said under direct that the first time she feels uncomfortable, anything, anything of a sexual nature, was when they were in the ditch. And now we know this happened before they got to the ditch. So they had this talk of a sexual nature on [the street] which contradicts what she's already testified. . . ." The court responded that he would not permit defense counsel to "get into any other prior sexual —," and defense counsel interjected, "It's part of the res gestae of this case."

The State moved for a mistrial. The trial court initially advised that it would instruct the jury to disregard the statement, and defense counsel continued to argue that he had a right to cross-examine the victim about her conversation with Chisholm. After excusing the jury and the victim, the court engaged in a lengthy colloquy with counsel on the issue. After having the court reporter read back defense counsel's question to the victim regarding her virginity, the court concluded "that the defense violated rape shield by asking a question related to her sexual conduct before this incident[,] which is strictly improper," but questioned whether granting a mistrial

3

would raise double jeopardy concerns. After breaking to permit the parties to research the issue, the colloquy resumed, with the court hearing detailed arguments from both parties, including regarding the possibility of giving a curative instruction. In particular, the State argued that "a curative instruction . . . just draws further attention to it. . . . And my concern is that in the minds of these jurors[,] they have formed an opinion about [the victim] because of this inadmissible character evidence that has come in that can't be undone." The trial court then granted the State's motion for a mistrial.

Thereafter, Chisholm filed a plea of former jeopardy. The trial court entered a written order detailing the testimony, analyzing the applicable law, and concluding that it: "conscientiously exercised his sound discretion in declaring the mistrial"; "considered alternatives to granting a mistrial [and] the possible ramifications of granting the mistrial"; and "granted the mistrial only after allowing counsel (and the court) the opportunity to research the issue." The court also concluded that Chisholm's

> questioning of the victim concerning her virginity was in violation of OCGA § 24-4-412 because that line of questioning is squarely within the subject proscribed by that statute, namely "evidence relating to the past sexual behavior of the complaining witness." OCGA § 24-4-412

4

(a). As such, the declaration of mistrial was appropriate. For the foregoing reasons, [Chisholm's p]lea of [f]ormer [j]eopardy is DENIED. . . .[2]

This appeal followed.

1. Chisholm contends that the trial court erred by denying his plea of former jeopardy because his cross-examination of the victim did not violate the Rape Shield Statute. We disagree.

In relevant part, the Rape Shield Statute codified in OCGA § 24-4-412 (a) (2018)[3] barred evidence

> [i]n any prosecution for rape [or other specified sexual offenses] . . . relating to the past sexual behavior of the complaining witness . . . either as direct evidence or on cross-examination . . . , except as provided in [subsection (b)]. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's . . . nonchastity.

---

[2] (Emphasis omitted.)

[3] "OCGA § 24-4-412 was substantially revised by the General Assembly, effective April 18, 2019. See Ga. L. 2019, p. 81, §§ 5, 9. The revised version of the Rape Shield Statute applies 'to any motion made or hearing or trial commenced on or after the effective date of this Act' and thus is inapplicable in the present case. Ga. L. 2019, p. 81, § 8." *Torres v. State*, ___ Ga. App. ___, ___ n.3 (Case No. A19A1989, decided Jan. 23, 2020). Because the trial in this case commenced on November 13, 2018, the 2018 version of the Rape Shield Statute applies to this case.

Pursuant to OCGA § 24-4-412 (b) (2018),

> [i]n any prosecution for rape [or other specified sexual offenses] evidence relating to the past sexual behavior of the complaining witness may be introduced if the court, following the procedure described in subsection (c) of this Code section, finds that the past sexual behavior directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

In the instant case, the Rape Shield Statue barred defense counsel's question about the victim's "nonchastity" because it related to her past sexual behavior,[4] and it did not fall within the single statutory exception set forth in OCGA § 24-4-412 (b) (2018) because it did not "directly involve the participation of the accused." Chisholm's argument that the question is admissible for other purposes, including impeachment, credibility, and evidence of motive and state of mind of both the victim and Chisholm is without merit. "[I]f evidence of the witness's past sexual behavior

---

[4] As the trial court concluded, defense counsel's initial question — about when Chisholm and the victim first discussed "things of a sexual nature" — was a proper method to impeach the victim without violating the Rape Shield Statute. Unfortunately, defense counsel did not stop there, but instead proceeded to ask the victim if Chisholm inquired about her virginity and suggested that she replied negatively.

6

falls outside the scope of the sole statutory exception contained in the former Rape Shield Statute, it is inadmissible, and appellate courts cannot write additional exceptions into the statutory framework."[5]

2. Chisholm argues that the trial court erred by denying his plea of former jeopardy because there was no manifest necessity to declare a mistrial and that limiting instructions would have cured any violation of the Rape Shield Statute. This enumeration presents no basis for reversal.

> Once a jury is impaneled and sworn, jeopardy attaches and a defendant is entitled to be acquitted or convicted by that jury. If a mistrial is declared without the defendant's consent or over his objection, he may be retried only if there was a manifest necessity for the mistrial. A manifest necessity exists when the defendant's right to have the trial completed must be subordinated to the public interest in affording the prosecutor a fair opportunity to present evidence to an impartial jury, and the ends of substantial justice cannot be attained

---

[5] *Torres*, ___ Ga. App. at ___ (3), citing *White v. State*, 305 Ga. 111, 115 (1) (823 SE2d 794) (2019) (holding that "a natural reading of the text of OCGA § 24-4-412 indicates that evidence of a complaining witness's past sexual behavior may not be introduced by any party at a trial involving a prosecution for certain sexual crimes unless such evidence falls under the one specific exception contained in the statute itself"). We further note that even if the question posed by defense counsel did fall within the statutory exception, Chisholm failed to follow the mandatory procedure set forth in OCGA § 24-4-412 (c) for introducing such evidence.

7

without discontinuing the trial. The trial court's decision that there was a manifest necessity to grant a mistrial is entitled to great deference.[6]

And "[w]here, as here, there is no showing of prosecutorial misconduct, a trial court has broad discretion to decide whether to grant a mistrial."[7]

The Supreme Court of Georgia has explained that

[a] trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.[8]

"[T]his Court, the Supreme Court of Georgia, and the United States Court of Appeals for the Eleventh Circuit have held that the introduction of evidence

---

[6] (Citations and punctuation omitted.) *Birdsong v. State*, 298 Ga. App. 322, 325 (2) (680 SE2d 159) (2009).

[7] *Meadows v. State*, 303 Ga. 507, 511 (2) (a) (813 SE2d 350) (2018).

[8] (Punctuation omitted.) *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003).

prohibited by the Rape Shield Statute gives a court grounds to find manifest necessity for a mistrial."[9] Furthermore, "a single unanswered question by defense counsel about the victim's sexual history may alone give rise to the manifest necessity for a mistrial."[10]

> The Supreme Court of Georgia
>
> has repeatedly emphasized that, before concluding that manifest necessity for a mistrial exists, the trial court should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes.[11]

Here, after concluding that defense counsel's question to the victim was improper, the trial court initially proposed giving the jury a curative or limiting instruction. Only after hearing argument, recessing to research the issue and to give counsel the opportunity to do the same, and receiving additional research did the trial

---

[9] *Birdsong*, 298 Ga. App. at 326 (2), citing *Abdi v. State*, 249 Ga. 827, 829 (294 SE2d 506) (1982), *State v. Abdi*, 162 Ga. App. 20, 22 (288 SE2d 772), & *Abdi v. Georgia*, 744 F2d 1500, 1502-1504 (11th Cir. 1984).

[10] *Banks v. State*, 230 Ga. App. 258, 263 (3) (495 SE2d 877) (1998).

[11] *Meadows*, 303 Ga. at 514 (2) (c), quoting *Harvey v. State*, 296 Ga. 823, 832 (770 SE2d 840) (2015).

9

court decide to grant the mistrial, rejecting any possible alternative. Given the nature of the question, defense counsel's suggestion that the victim told Chisholm that she was not a virgin, the prejudice to the State's case, the trial court's careful consideration of the law, facts, and possible alternatives, we find no abuse of the trial court's broad discretion in declaring a mistrial.[12] "Accordingly, the trial court did not err [by] denying [Chisholm's] subsequent plea in bar of former jeopardy."[13]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[12] See *Harvey*, 296 Ga. at 833-834 (2) (c); *Birdsong*, 298 Ga. App. at 326-327 (2).

[13] *Birdsong*, 298 Ga. App. at 327 (2).