### A10A0022. BELLEW v. THE STATE.

(697 SE2d 249)

BARNES, Presiding Judge.

Gerrette Bellew was indicted and tried for aggravated assault with intent to rob, aggravated assault with a deadly weapon, and two weapons possession charges. After the State rested and several of Bellew's witnesses had testified, the trial court declared a mistrial after determining that some of the jurors had discussed the case in violation of the trial court's orders. Bellew filed a plea in bar, which

the trial court overruled. Bellew appeals, contending the trial court erred by relying on hearsay evidence to grant a mistrial without a showing of manifest necessity. Finding no error, we affirm the trial court.

When reviewing a trial court's decision on a plea in bar, we conduct a de novo review of the legal issues. *State v. Conzo*, 293 Ga. App. 72, 73 (666 SE2d 404) (2008). We accept the trial court's findings on disputed facts and issues of witness credibility unless those findings are clearly erroneous. Id.

The record shows that the victim in this case is an attorney who was accosted in his back yard by a man pointing a shotgun at him and demanding money. After the State rested and Bellew began to present his case, it was brought to the court's attention that a juror might have been talking about the case with his estranged wife. The victim had represented the wife against the juror in a divorce proceeding some years earlier. A secretary at the victim's law firm testified that the juror's wife had called and reported that her husband held a grudge against the victim and "was going to vote against the victim . . . at the end of trial." The wife could not be contacted immediately, so in the meantime the trial proceeded.

Later, the juror was called before the court and denied having negative feelings toward the victim. The juror had subsequently remarried his wife and was in the process of divorcing her again. He admitted, however, that he had discussed the merits of the case with his wife, commenting to her that he had "not seen any evidence" and that eyewitness testimony was unreliable. The State moved to strike the juror, and the trial court released the juror from service over Bellew's objections, finding that the juror had discussed the merits of the case contrary to the court's instructions. Bellew objected to replacing the dismissed juror with the one remaining alternate juror, stating he would instead agree to proceed with eleven jurors. The State, however, did not agree to submit the case to an 11-person jury, and asked the trial court to interview the remaining jurors individually to determine whether any of them had discussed the case or overheard anyone else do so.

Over Bellew's objection, the trial court asked each juror whether he or she had discussed the case or the evidence or heard anyone else do so. Several jurors told the court they had overheard other jurors discussing various aspects of the case, such as the witnesses' credibility, and one juror had repeatedly expressed her opinion that the defendant was guilty.

After the individual juror examinations, the court asked if the parties requested any further inquiry of the jurors. The State responded, "it's fairly clear that we can't go forward at this time," considering that some of the jurors had disobeyed the court's

instructions not to discuss the case. The court declared a mistrial and discharged the jury. In its written order, the trial court found that a mistrial was warranted because some of the jurors had discussed the merits of the case in violation of the court's directions. In addition, the court found that Bellew had consented to the mistrial.

Bellew filed a plea in bar, asserting that he was "goaded into agreeing" to the mistrial "by comments which were the result of manipulation by the State," and that double jeopardy therefore barred the State from further prosecuting him. During a hearing on the motion, Bellew stated he had not received the court's written order declaring the mistrial until his case was called for trial again, nor had he read the prior trial transcript when he filed his plea in bar. After he read the transcript, he disagreed with the court's finding that he had consented to the mistrial. He argued that the trial court failed to ask the jurors whether they could continue to be fair and impartial jurors, and that the court improperly relied entirely on hearsay evidence from the jurors, none of whom admitted to talking about the case themselves. Finally, he asserted that no competent evidence established a "manifest necessity" for declaring a mistrial, and that the trial court erred in failing to make a finding of manifest necessity.

After reviewing "with some level of intensity" the colloquy that ensued after the jurors were questioned, the trial court found that Bellew impliedly acquiesced in the State's motion for mistrial. The court further held that, regardless of whether Bellew consented, the jurors' prejudicial conduct made it impossible to proceed without injustice to Bellew. Thus, the court held, it did not err in granting the mistrial, and it overruled Bellew's plea in bar.

Bellew argues on appeal that the trial court erred by relying on hearsay evidence to grant a mistrial without a showing of manifest necessity. The State responds that Bellew waived his double jeopardy claim by consenting to the mistrial, and further asserts that the jurors' conduct in considering the merits of the case before all the evidence was submitted made the mistrial necessary.

1. Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a right under the Double Jeopardy Clause to be tried by the original impaneled jury. *Tubbs v. State*, 276 Ga. 751, 754 (583 SE2d 853) (2003). That right is balanced against the State's right to a fair trial. Id. When the trial court declares a mistrial without the defendant's consent or over his objection, a retrial is nevertheless permissible if a manifest necessity existed for declaring the mistrial. *Perez v. State*, 266 Ga. App. 82, 84 (596 SE2d 191) (2004).

A manifest necessity exists when the defendant's right to have the trial completed must be subordinated to the public

interest in affording the prosecutor a fair opportunity to present evidence to an impartial jury, and the ends of substantial justice cannot be attained without discontinuing the trial.

(Citation and punctuation omitted.) Id. The appellate courts give great deference to the trial court's decision that there was a manifest necessity for a mistrial. *Putnam v. State*, 245 Ga. App. 95, 97 (537 SE2d 384) (2000). Whether juror misconduct is so prejudicial as to require removal and a mistrial is a matter generally left to the trial court's discretion, and the absence of prosecutorial misconduct is a significant factor. *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998).

Bellew argues that the trial court should have asked the jurors whether they could render an impartial verdict based on the evidence, and should have considered less drastic measures before declaring a mistrial. The record establishes, however, that at least seven of the jurors admitted overhearing other jurors discuss various aspects of the case. While Bellew asserts that all of this evidence was hearsay because none of the jurors admitted personally discussing the case, the decision to grant a mistrial must be based on the surrounding circumstances in their totality. *Cooke*, supra, 230 Ga. App. at 327. The trial court was in the presence of the individual jurors and was able to determine potential prejudice based on the jurors' responses as a whole.

More importantly, "[i]f a defendant consents to a mistrial, he may not later use the mistrial as the basis of a plea of double jeopardy." *Howell v. State*, 266 Ga. App. 480, 487 (3) (597 SE2d 546) (2004). While the record reflects that Bellew did not explicitly consent to the mistrial, consent may be express or implied. Id. In its written order declaring the mistrial, the trial court found that Bellew implied his consent to the mistrial, stating, "Counsel for the State moved for a mistrial based on certain jurors' failure to follow the Court's instruction not to discuss the case at this stage. Counsel for the Defendant concurred."

Bellew maintains he did not consent by implication to the mistrial, and asserts he was denied a meaningful opportunity to object. The record does not support this contention, and in fact, reveals that before ruling the trial court specifically asked Bellew whether he joined the State's motion for mistrial. Bellew avoided a "yes" or "no" answer, responding only that he wanted the court to consider granting him bond. Having been given the opportunity to voice his objection and not voicing it, he cannot now contend that he actually meant "no."

The transcript supports the trial court's conclusion that Bellew

consented. After examining the jurors individually, the trial court asked the parties whether they wanted further inquiry. The following discussion ensued:

[THE STATE]: Judge, I'm not certain you need anymore at this point. I think it's fairly clear that we probably can't go forward at this time. . . . I haven't fully researched all that, but I think we've got folks who have done something totally contrary to what your instructions were and, you know, and I won't say anymore.

THE COURT: Mr. [Defense Counsel].

. . .

[BELLEW]: I think that the district attorney has summarized well the state of the situation.

THE COURT: So you agree that the — Mr. [District Attorney], are you moving for a mistrial, or —

[THE STATE]: It may be that we're . . . concurring in that and I guess jointly moving for a mistrial. Am I correct, [Defense Counsel]?

THE COURT: Do you —

[BELLEW]: The only thing, Your Honor, my client is sitting in jail. I would ask that the Court consider a bond.

THE COURT: So you agree that the case needs to be mistried?

[BELLEW]: It certainly sounds to me like it's an unfortunate — I don't want to say — Well, I will say that I did express early on, Your Honor, the need to bang the jurors in the head about not talking about the case, and, obviously, there's been a huge violation of your orders on that.

THE COURT: . . . I don't think y'all are disagreeing that the jurors have engaged in discussion of the case and that some of them have expressed opinions prior to having heard all the evidence.

[BELLEW]: Yes.

THE COURT: So I think the Court has no alternative but to declare a mistrial in the case and discharge the jury.

[BELLEW]: Could I inquire as to the Court's please — you've heard now the evidence — consideration of a leg-monitored bond for my client?

THE COURT: I will consider that shortly.

The court dismissed the jury, then asked whether Bellew had a motion. He replied that he requested bond, and the parties then addressed that issue. Bellew never objected to the mistrial or

534

addressed it further during this proceeding.

During the plea in bar hearing, the trial court stated:

> [W]hile it is grammatically correct to state that the Defense did not join or did not consent to the mistrial, the Defense did acknowledge significant juror misconduct and, in fact, the Court's impression, as was, I think, the impression of the court reporter who originally transcribed it, that there had been concurrence as to the mistrial.

Based on the transcript as quoted above, the trial court did not abuse its discretion by finding that Bellew consented to the mistrial. Having consented, he may not now assert the mistrial as a bar to further prosecution, and the trial court did not err in denying his plea in bar. *Perez*, supra, 266 Ga. App. at 82.

2. Bellew lastly contends the trial court relied on hearsay from the jurors in ordering a mistrial. Based on our holding in Division 1 that Bellew consented to the mistrial, we need not address this enumeration. We note, however, that the issue was not whether any of the jurors admitted violating the court's order. Based on the individual examinations, the trial court did not abuse its discretion in determining its directive not to discuss the case prematurely was not followed.

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED JUNE 22, 2010.

*James W. Smith*, for appellant.
*Kenneth W. Mauldin, District Attorney, C. Rebecca Smith, Assistant District Attorney*, for appellee.