296 Ga. 823
FINAL COPY

S14A1646.  HARVEY v. THE STATE.

NAHMIAS, Justice.

Appellant Kajul Harvey challenges the trial court's denial of her plea in bar based on double jeopardy after her first trial for murder and other crimes ended in a mistrial.  We conclude that the trial court did not abuse its discretion in determining that Appellant's counsel violated the court's pretrial ruling on a motion in limine and improperly referred to evidence that may well not be admissible when he referred to Appellant's police interview during his opening statement, and the court also did not abuse its discretion in deciding that alternatives short of a mistrial were insufficient to cure the harm.  Accordingly, we uphold the denial of the plea in bar.  Our rejection of Appellant's double jeopardy claim on the merits makes it unnecessary for us to decide whether the trial court erred in finding that the claim was frivolous and allowing her retrial to proceed.  We therefore affirm the trial court's judgment.

1.    In February 2013, Appellant and her boyfriend, Latoris Grovner, were indicted for malice murder and other crimes in connection with the brutal beating death of Appellant's mother and subsequent attempts to access her bank

accounts in June 2011.[1] Appellant had been interviewed by the police for several hours, and the interview was videotaped. On April 15, 2013, the first day of Appellant's trial, the State filed a motion in limine to preclude "the defense from making opening statements that reference self[-]serving hearsay statements made by the defendant[ ]" or asking witnesses for the State or the defense any questions that reference such statements "until the door is opened by the State or until after the defendant testifies."

The trial court held a hearing on the motion, during which the prosecutor revealed that the State did not intend to introduce the videotape of Appellant's police interview during its case-in-chief. At that point, Appellant's attorney, assistant public defender Lloyd Matthews, indicated that he might seek to admit a redacted version of the interview, and the court asked the prosecutor, "What happens if . . . the defense puts that interview in . . . ?" The prosecutor responded that the State would object to any attempt by the defense to introduce Appellant's police interview, directed the court's attention to the State's written motion, and argued, "as it relates to the interview, we don't believe that it should

---

[1] Grovner was tried separately and found guilty of voluntary manslaughter and other crimes.

2

be referenced." Matthews urged the court to deny the State's motion, explaining that in his view, as the evidence unfolded, it was "inevitable" that at least part of the interview would be played for the jury, and that "once [the jurors] find out there's a video tape, they're going to want to . . . see that video tape."

The trial court granted the motion in limine, saying:

> The third motion was about the self[-]serving hearsay in the defendant's [police interview]. The State's asking that that not be allowed to [be gone] into unless and until the defendant testifies. And I will instruct the parties not to go into any statements, any contents of her statements to the police until such time.

A jury was then impaneled and sworn.

The next morning, the State made its opening statement, making no reference to Appellant's police interview. Matthews followed with the opening statement for Appellant, telling the jury as he began:

> [T]his case ultimately boils down to a case of a mistaken rush to judgment. . . . The police immediately glom onto my client as the co-perpetrator and they never deviate from their scenario. . . . I mean the . . . lead detective, Joanne Sutherland[,] and her fellow detectives . . . . This whole case is not a plan for the deceased['s] demise, but a rush to judgement to blame my client. Now when I say rush to judgement, that necessarily implies that something is being overlooked.

3

Matthews reviewed what he said the evidence would show, telling the jury that there would be no evidence of a plan or conspiracy involving Appellant. He then said: "My client, on being interviewed by the police was very cooperative with the police. She submitted herself to several hours of interview — ."

At that point, the prosecutor objected, and the court held a bench conference. The prosecutor argued:

> [T]he very fact that he's referencing this interview and the fact that it existed is a violation of the self-serving [hearsay] motion that we had in reference to that interview. . . . [T]he mere fact that she gave one is in direct violation of the Motion in Limine.

Matthews claimed that he understood the State's motion as seeking to preclude him from mentioning the contents of Appellant's statement to the police, not from referring to the fact that an interview had taken place. Matthews also claimed that Appellant would testify as part of the defense case, but the court observed, "that still doesn't mean the interview comes in." Matthews then said, "I wasn't going to talk about the actual substance of the interview. I was just going to say that she was cooperative."

The State requested a mistrial, and the court sent out the jury so the court could hear further argument from counsel. After quoting the State's motion in

limine, the prosecutor argued that "by indicating that [Appellant] . . . spoke to the police for hours, that's a direct reference." Matthews reiterated his claim that he understood the State's motion to mean that the prosecutor "did not want me to actually mention the content of the statements. I didn't think . . . there was a big deal about whether I mentioned the fact that there was an interview." As he had in the hearing before the motion was granted, Matthews again asserted that the fact of the police interview was "inevitably going to come out" once Appellant testified, because the State would then use her interview responses to impeach her testimony. Matthews added that even if he violated the court's pretrial ruling, an instruction to the jury to disregard his remarks would be sufficient to cure any harm.

The court responded to this suggested remedy by saying:

[T]he jury has just heard that your client gave a three hour interview to the police. . . . You've just told the jury [Appellant] has been cooperative, she gave a lengthy interview to the police after I told you not to mention the interview, yesterday.

The prosecutor argued that a limiting instruction would be insufficient to cure the harm, because despite Matthews's claim that Appellant would testify, the State could not compel her to do so, and if Appellant ultimately declined to take

5

the stand during the defense case, then "what we have hanging out there is she's been cooperative in reference to the police. That's the point of a Motion in Limine and Mr. Matthews knows better." The prosecutor added, "This is not the first time we've had a self-serving hearsay motion in this courtroom and it's not the first time we've had one with Mr. Matthews. I think that was a direct act to violate the Motion in Limine and we would ask for a mistrial."

After a short recess to consider the matter, the trial court asked if either side had any additional input. The prosecutor said:

> The State has committed in the opening statement and based on trial strategy that the defendant's self-serving statements would not be referenced. Their content was referenced [by Matthews] by indicating that [Appellant] was cooperative with the police, as well as the existence of that self-serving statement, which is in direct contravention of this Court's ruling [on] the third Motion in Limine. And we don't believe that a curative instruction would be sufficient . . . . [W]e don't believe it's [an] abuse of discretion to grant a mistrial when there has been affirmative conduct to mention it in opening statement. The bell has already been rung. And if the defendant decides not to testify, the State has an additional burden of proving why we didn't present this . . . videotaped statement . . . that was referenced.

Matthews replied that he had "already committed to the jury that [Appellant] is going to testify," asserted again that he thought that the court's pretrial ruling only prevented him from mentioning the contents of the police interview, and

6

requested that the court give a curative instruction, ask the jurors if any of them could not follow the instruction, and then go forward with the trial if no one raised a hand.

The trial court found that Matthews's remarks to the jury violated the ruling on the motion in limine and that a jury instruction would be insufficient to cure the harm, explaining:

> Although the jury has not heard any reference to the content of what [Appellant] said, they heard that she had been cooperative and made a statement. Spoke with police for . . . several hours. . . . [T]here was a Motion in Limine granted yesterday to — I said there would be no reference to that statement. And now — the jury has heard there is a statement. Even if the defendant testifies, there is no guarantee that that statement comes in. And there's certainly no way that the Court can force her to testify if she chooses not to testify when we get to the defense's portion of the trial. And then the jury is going to, I think, wonder, well, if she made a statement to the police, why haven't we heard it. And if I tell them, well, I've excluded it, it seems to me that [the] natural inclination of the jury is to say, well, the police must have done wrong because they can't get that interview in or something. Or they will start wondering why the interview doesn't come in and they'll say, well, the burden is on the State, the State didn't produce this interview, what's going on. And I just feel that it's safer. I hate to grant a mistrial after we've spent a day picking a jury, but I just don't see how to un-ring that bell. I'm going to grant the State's motion for mistrial.

After discharging the jury, the court asked counsel about a new trial date. The prosecutor then moved to dismiss Appellant's statutory speedy trial demand

7

in light of the mistrial, and the court said, "I find that the mistrial induced by the defense's conduct waives the speedy trial demand."  The retrial was set for about two months later, in June 2013.

On April 26, Appellant filed a plea in bar, contending that double jeopardy barred her from being retried because there was no manifest necessity for the mistrial and the trial court failed to consider less drastic alternatives.  On May 6 and again on May 30, Appellant amended her plea to allege that the prosecutor had moved for a mistrial to "buy time" to buttress a weak case, noting that Appellant had filed a statutory speedy trial demand.

On June 5, the trial court held an evidentiary hearing at which the prosecutor testified.  During cross-examination by Matthews, the prosecutor said, "you [Matthews] not only referenced the fact that there was an interview given, you also referenced the contents by indicating that Appellant was cooperative during that interview."  Matthews asked if his telling the jury that Appellant was "cooperative" could be interpreted as referring to something other than the contents of the police interview, and the prosecutor said "No," that would not be a "fair interpretation."  The prosecutor also testified that she found it surprising that Matthews violated the court's ruling on the motion in

8

limine, "considering the fact that in this courtroom you and I have had that same motion and that's never occurred." The prosecutor added that the State had no reason to delay the trial because she had succeeded in persuading the trial court to exclude a defense expert witness; all the State's witnesses were present and ready to testify; and "at that point our decision not to play that eight-hour interview had been revealed to the Defense in what we thought was a motion in limine that perhaps they were not expecting. So, no, in fact, we did not want the mistrial and none of our conduct caused it." The prosecutor said that Matthews's statement to the jury that Appellant "had been cooperative with the police hamstrung our efforts to proceed" and that an instruction to disregard Matthews's statement would be insufficient to cure the harm, because the jury would still wonder why, in its case-in-chief, the State did not produce the interview in which Appellant had allegedly cooperated with the police.

At the end of the hearing, the trial court said:

[The jury] heard that a statement existed. And there's a reference to what happened in the statement by saying that [Appellant was] cooperative. I agree with the State's interpretation of that, too, that that is a reference to the contents. . . . I think that violates the Motion in Limine, the exclusion, to start dancing around it and saying, I know I can't go into it, but I'm going to tell the jury that

9

a statement was given. I'm going to tell the jury that she was cooperative.

The court found that "[t]here has been no evidence that a delay benefits the State. There has been no evidence that the State did anything to induce a mistrial. In fact, it was done by Defense counsel." The court also explained why it rejected Appellant's proposed alternative to a mistrial:

> I didn't know how to tell the jury, give them a curative instruction to disregard the Defense counsel's statement that his client had made a statement to the police in which she had been very cooperative because then the State was put in a position of maybe trying to explain if there was a statement, why the jury doesn't get to hear it. And I just felt like, as I said that day, that was a bell that could not be unrung.

The next day, June 6, 2013, the court entered an order striking Appellant's speedy trial demand based on its findings that Matthews violated the court's ruling on the motion in limine and that the mistrial was caused by defense counsel's conduct. Also on June 6, the court entered an order denying Appellant's plea in bar, which included a finding that

> the plea of double jeopardy is frivolous, in that the mistrial was not induced by the State but rather by defense counsel, . . . defense counsel acknowledges that the [court] has broad discretion in deciding whether to grant a mistrial, and [Appellant] has failed to produce any credible evidence that the State desired a mistrial or would benefit from the granting of same.

10

Appellant filed a timely notice of appeal from the order denying her plea in bar, which is the appeal currently before this Court; she did not move for this Court to stay her retrial pending our decision on this appeal. Appellant was then retried, and on June 21, 2013, the jury found her guilty of the malice murder of her mother and other crimes. She has not yet been sentenced.[2]

2. Appellant contends that the trial court erred in denying her plea in bar for two reasons. First, she argues that her defense counsel did not violate the court's pretrial ruling on the State's motion in limine during his opening statement. Second, she argues that giving the jury a curative instruction would

---

[2] The prosecutor and the trial court appear to have understood DeSouza v. State, 285 Ga. App. 201 (645 SE2d 684) (2007), to hold that where a defendant appeals the denial of a plea in bar and the trial court finds the plea to be frivolous, the trial may proceed, but the defendant may not be sentenced until the plea in bar appeal has been decided and the remittitur from that appeal is filed in the trial court. That reading of DeSouza's holding is incorrect. The Court of Appeals held that the trial court did not err in proceeding with the defendant's retrial during the pendency of his appeal from the denial of a plea in bar that was found to be frivolous. See id. at 202-203. The court noted in passing that the defendant's "sentence was not imposed until after the remittitur [from the plea appeal] was filed below," id. at 203, but the court did not hold that the supersedeas from the notice of appeal precluded the trial court from sentencing the defendant. Where a defendant files a notice of appeal challenging the denial of a plea in bar that the trial court finds to be frivolous or dilatory, the defendant may be retried, convicted, and sentenced despite the pendency of the defendant's appeal. See Strickland v. State, 258 Ga. 764, 766, n. 1 (373 SE2d 736) (1988) (suggesting that a merits appeal from a conviction and sentence and an appeal from the earlier denial of a plea in bar could be decided together if the General Assembly required an application to appeal the denial of a plea in bar, which could not happen if the plea in bar appeal prevented the trial court from entering an appealable final judgment sentencing the defendant). See also Baker v. State, 263 Ga. App. 462, 463-466 (588 SE2d 288) (2003) (deciding a challenge to the denial of a plea in bar that the trial court found to be frivolous in an appeal from the defendant's convictions and sentence).

11

have been sufficient to remove any harm. As explained below, the trial court did not abuse its discretion in granting a mistrial, so the court properly denied Appellant's plea in bar based on double jeopardy.

(a) The Double Jeopardy Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, says that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U. S. Const. amend. V. Once a jury is impaneled and sworn, jeopardy attaches, and the defendant normally has a right to have her trial completed by that particular tribunal. See Pleas v. State, 268 Ga. 889, 890 (495 SE2d 4) (1998); Fugitt v. State, 253 Ga. 311, 315 (319 SE2d 829) (1984). However, this right "'is not paramount to the state's equal right to a fair trial.'" Tubbs v. State, 276 Ga. 751, 754 (583 SE2d 853) (2003) (citation omitted). A defendant's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." Arizona v. Washington, 434 U.S. 497, 505 (98 SCt 824, 54 LE2d 717) (1978). Accordingly, "in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to

whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville, 410

U. S. 458, 467 (93 SCt 1066, 35 LE2d 425) (1973).[3]

Trial courts may declare a mistrial over the defendant's objection, without

barring retrial, "'whenever, in their opinion, taking all the circumstances into

consideration, there is a manifest necessity' for doing so." Renico v. Lett, 559

U. S. 766, 773-774 (130 SCt 1855, 176 LE2d 678) (2010) (quoting United

States v. Perez, 22 U. S. (9 Wheat.) 579, 580 (6 LE 165) (1824)). The United

States Supreme Court has clarified that "the 'manifest necessity' standard

[established in Perez] 'cannot be interpreted literally,' and that a mistrial is

appropriate when there is a '"high degree"' of necessity." Renico, 559 U. S. at

774 (citations omitted).

The decisions of this Court and the U. S. Supreme Court emphasize that

whether the required degree of necessity for a mistrial has been shown is a

matter best judged by the trial court. See, e.g., Tubbs, 276 Ga. at 754-755 ("'[A]

trial court's judgment about whether there was manifest necessity to grant a

---

[3] The double jeopardy provision of the Georgia Constitution makes explicit that a trial ending in a mistrial does not always bar retrial. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").

13

mistrial is entitled to great deference.'" (citation omitted)); Renico, 559 U. S. at 774 ("The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge, a point that 'has been consistently reiterated in decisions of this Court.'" (citation omitted)). "[T]he propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial" cannot be determined by the application of any mechanical formula. Somerville, 410 U. S. at 462. Moreover, "compelling institutional considerations" militate in favor of appellate deference to the trial judge's evaluation of the impact of improper conduct on the jury. Washington, 434 U. S. at 513. The trial judge

> has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

Id. at 513-514 (citation omitted). Furthermore, "a criminal trial is, even in the best of circumstances, a complicated affair to manage," United States v. Jorn, 400 U. S. 470, 479 (91 SCt 547, 27 LE2d 543) (1971) (plurality opinion), and unless

14

defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

Washington, 434 U. S. at 513.

This is not to say, however, that a court must conclude that defense counsel unscrupulously sought an "unfair advantage" in order to declare a mistrial without barring retrial.

Where inadmissible evidence is introduced or otherwise comes to the attention of the jury, and curative instructions cannot free the jury's mind of prejudice, it is error not to declare a mistrial. This is true even where the action which brought the inadmissible evidence to the jury's attention was unintentional, innocent, or unattributable to any party, as that fact does not make the evidence less inadmissible or less prejudicial.

Varner v. State, 285 Ga. 334, 335 (676 SE2d 209) (2009) (citations omitted). Thus, a mistrial may be required not as a sanction for misconduct, but simply because evidence was improperly put before the jury that could influence its decision.

The trial judge "is not required to make explicit findings of '"manifest necessity"' nor to 'articulate on the record all the factors which informed the

deliberate exercise of his discretion.'" Renico, 559 U. S. at 775 (citation omitted). However, the record must show that the trial court actually exercised its discretion. See Washington, 434 U. S. at 514-516. See also Jorn, 400 U. S. at 485, 487 (plurality opinion) (discussing the Court's "conscious refusal" to channel trial courts' exercise of their broad discretion to grant mistrials without barring retrial, but emphasizing that "that discretion must still be exercised"). For this reason, we have instructed trial courts to "give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes." Smith v. State, 263 Ga. 782, 783 (439 SE2d 483) (1994). Where it is clear from the record that the trial court actually exercised its discretion in deciding to grant a mistrial, the Double Jeopardy Clause generally will not bar retrial. See Jenkins v. State, 294 Ga. 506, 509 (755 SE2d 138) (2014).

(b)    Here, when defense counsel told the jury that Appellant was "very cooperative with the police" during an hours-long interview, the prosecutor promptly objected on the ground that this statement referenced evidence that was subject to a motion in limine, and the trial court held a bench conference to

16

discuss the matter. When the prosecutor requested a mistrial, the court excused the jury and heard further arguments from defense counsel and the prosecutor concerning whether the court's pretrial ruling had been violated and, if so, whether an alternative short of a mistrial would be sufficient to cure the harm so that the trial could proceed. In keeping with this Court's direction in Smith, the trial court then called a recess to allow deliberate consideration of the State's mistrial request and Matthews's proposed alternative, and the court then heard additional argument from both sides after retaking the bench. Only then did the trial court grant the mistrial.

Thus, the record demonstrates that in deciding whether to grant a mistrial, the trial court carefully and thoughtfully weighed the defendant's right to have her trial completed against the public interest in affording the prosecution one full and fair opportunity to present its evidence to an impartial jury. Moreover, these matters were further argued, and the court's reasoning further elaborated, in the subsequent hearing and orders on Appellant's statutory speedy trial demand and plea in bar. Accordingly, the question before us is not whether the trial court exercised its discretion to grant a mistrial with care and full deliberation or whether, with the benefit of hindsight, we would say that a

mistrial was necessary. Our task is only to decide whether the trial court abused its broad discretion.

(c) Appellant argues that the trial court erred in concluding that Matthews violated the court's ruling on the State's motion in limine, because that ruling did not bar reference to the existence of her police interview as opposed to its specific contents. The day before Matthews made his opening statement, the court held a hearing on the State's motion in limine, during which the prosecutor disclosed for the first time that the State did not intend to admit Appellant's videotaped police interview in its case-in-chief. Matthews indicated that he thought that some portions of the interview were favorable to his client and that he might seek to introduce a redacted version of the videotape as part of the defense case. The prosecutor was adamant that the State would object to any attempt to introduce the videotape until after Appellant testified. Matthews resisted the State's motion, seeking to preserve his ability to introduce portions of the videotape and to refer to the interview in his opening statement and in questioning witnesses. The court ruled against Matthews by granting the motion in limine. See Sims v. State, 251 Ga. 877, 879 (311 SE2d 161) (1984) ("[T]he trial court has a sound discretion to control the content of the opening statement

18

of either party, particularly with regard to matters of questionable admissibility.").

When the trial court's oral ruling on the motion in limine is viewed in its full context, we cannot say that the court abused its discretion in concluding that its pretrial decision was understood by the court and by the parties as prohibiting Matthews from making any mention of Appellant's police interview in his opening statement. See Saye v. Provident Life & Accident Ins. Co., 311 Ga. App. 74, 77 (714 SE2d 614) (2011) (holding that trial courts have discretion to decide whether litigation conduct violates a ruling on a motion in limine). One of the primary reasons that motions in limine are filed is "to prevent the mention by anyone, during the trial, of a certain item of evidence or area of inquiry until its admissibility can be determined during the course of the trial outside the presence of the jury." State v. Johnston, 249 Ga. 413, 415 (291 SE2d 543) (1982) (emphasis omitted). Thus, a motion in limine serves as a warning shot that a particular item or area of evidence will likely draw objection and may be deemed inadmissible. And at the hearing on the State's motion, the prosecutor made it clear that the State did not intend to introduce the police interview and sought to prevent any reference to the interview unless and until Appellant took

19

the witness stand. That obviously would not occur before opening statements and might not happen even if defense counsel promised that his client would testify, since the decision whether to testify is ultimately for the defendant to make, not her lawyer. See Spencer v. State, 287 Ga. 434, 439 (696 SE2d 617) (2010). The prosecutor obviously understood Matthews's statement to be a violation of the court's ruling, as indicated by her prompt objection as well as her later testimony. The prosecutor also indicated that she and Matthews had experience with this same motion in limine before the same judge in prior cases and Matthews had not violated it before.

Moreover, Appellant concedes that the ruling on the State's motion in limine explicitly prohibited any reference to the contents of Appellant's police interview. As the trial court explained during the June 5 hearing, and as the prosecutor had argued just before the mistrial was granted, Matthews violated this prohibition when he told the jury that the police interviewed Appellant for several hours and that she was supposedly "very cooperative with the police" during the interview.[4] Considering that the trial court was able to evaluate the

---

[4] In its oral ruling at trial on the State's mistrial request, the trial court said that "the jury has not heard any reference to the content of what [Appellant] said," but the court's later discussions indicate that by "content" it was referring there to the specific things Appellant said during the

20

tone, demeanor, and credibility of defense counsel during the hearing on the motion in limine, when he made the disputed statement during his opening, and when he argued that he did not knowingly violate the pretrial ruling — something we cannot do from the cold record on appeal — we cannot say that the trial court abused its discretion in finding that its ruling was violated.

In addition, even if the pretrial ruling was imprecise and Matthews's violation of the ruling was not the most blatant, the trial court could decide that evidence that was unlikely to be admitted and prejudicial to the State had been placed before the jury during opening statements. Under these circumstances, the court had discretion to decide that it was better to start over with a new trial instead of waiting to see if the disputed evidence came in after days of testimony and having to declare a mistrial then if the evidence was never admitted. See Varner, 285 Ga. at 335 (explaining that a mistrial may be granted, without barring retrial, even though the action that brought the inadmissible evidence to the jury's attention was "unintentional, innocent, or unattributable to any party, as that fact does not make the evidence less inadmissible or less prejudicial").

---

interview.

(d)    Appellant also argues that, even if Matthews improperly referred to her police interview, the trial court erred in determining that a curative instruction would be insufficient to cure any harm to the State.  "[A] trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference" on appeal, Washington, 434 U. S. at 514, and we will affirm the trial court's rejection of possible alternatives to a mistrial "'if reasonable judges could differ about the proper disposition.'"  Tubbs, 276 Ga. at 754 (citation omitted).

Here, the trial judge not only heard and saw the way in which Matthews made the improper comments to the jury, but also had the opportunity to observe the jury's reaction to them.

> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal.  Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted.  The trial judge, of course, may instruct the jury to disregard the improper comment.  In extreme cases, he may discipline counsel, or even remove him from the trial . . . .  Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument.

Washington, 434 U. S. at 512-513 (footnote omitted).  As noted above, one of the primary purposes of a motion in limine is to prevent the other side from

22

making any reference to certain evidence until that evidence is actually determined to be admissible at trial. As explained in Black's Law Dictionary (10th ed. 2014):

> Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard. If, after the motion is granted, the opposing party mentions or attempts to offer the evidence in the jury's presence, a mistrial may be ordered.

Here, as the court explained in granting the State's request for a mistrial and again later in the hearing on the plea in bar, if Appellant elected not to testify after the State concluded its case-in-chief, the jury would be left to wonder why they never heard the hours-long interview that defense counsel had referenced at the outset of the trial, during which Appellant was allegedly "very cooperative with the police." This scenario would be particularly damaging to the State, which had the burden to prove Appellant's guilt to the jury beyond a reasonable doubt. It was not unreasonable in this situation for the trial court to conclude that it could not "un-ring that bell" simply by instructing the jury to disregard defense counsel's reference. Indeed, by explaining or implying that the interview was inadmissible, the court could have raised the inference that the police rather than defense counsel had done something wrong — reinforcing the

23

theme of defense counsel's opening that the police had conducted an improper investigation.

(e) For these reasons, the trial court did not abuse its discretion in granting a mistrial, Appellant's right against double jeopardy was not violated, and the court therefore properly denied her plea in bar.

3. Appellant also contends that the trial court erred in finding that her double jeopardy plea was frivolous and therefore allowing her retrial to proceed despite her notice of appeal from the order denying her plea. Citing Rielli v. Oliver, 170 Ga. App. 699, 700 (318 SE2d 173) (1984), which in turn "adopt[ed] the rationale of [United States v. Dunbar, 611 F2d 985 (5th Cir. 1980) (en banc)]," this Court has held that a trial court retains jurisdiction to try a defendant, despite her filing of a notice of appeal from the denial of a motion for discharge and acquittal on double jeopardy grounds, where the trial court makes a written finding that the motion was frivolous and dilatory. See Strickland, 258 Ga. at 766.

Appellant did not file a motion in this Court to stay her retrial pending our decision in this appeal of the denial of her plea in bar based on double jeopardy. See Dunbar, 611 F2d at 989 (explaining that appellate courts are "empowered

to protect the defendant's double jeopardy rights by staying proceedings below pending appeal or by issuing a writ of mandamus or prohibition" (citation omitted)). See also Prather v. State, 303 Ga. App. 374, 376 (693 SE2d 546) (2010) (noting, in the defendant's appeal from the denial of his plea in bar, that the Court of Appeals granted his emergency motion to stay his retrial pending the outcome of the appeal); DeSouza, 285 Ga. App. at 202 (noting, in the defendant's appeal from his convictions after retrial following a mistrial, that the Court of Appeals considered and denied his emergency motion to stay his retrial pending the outcome of his plea in bar appeal). And as explained by the Eleventh Circuit, under the procedure set forth in Dunbar:

> If the [trial] court makes written findings that a double jeopardy claim is frivolous or dilatory, then the [notice of] appeal does not divest the [trial] court of jurisdiction, thus permitting the retrial to proceed. The double jeopardy claim is properly heard on appeal from the defendant's conviction on retrial. If the appellate court rejects the double jeopardy claim on the merits, the jurisdiction of the [trial] court with respect to the retrial is affirmed, without the necessity of examining whether or not the double jeopardy claim was in fact frivolous. This procedure adequately protects defendant's double jeopardy interest in not running the gauntlet of a second trial because the defendant may seek an appellate stay of the retrial in connection with the interlocutory appeal . . . .

United States v. Farmer, 923 F2d 1557, 1565 (11th Cir. 1991) (citing Dunbar, 611 F2d at 989).

Viewed in another way, if a defendant fails to obtain an appellate stay of a trial court's ruling that her double jeopardy claim is frivolous, and she is then retried and convicted, the only real question is whether her double jeopardy claim is meritorious. If so, she is entitled to a reversal of her conviction; the harm of enduring the retrial cannot be eradicated. And if her double jeopardy claim is not meritorious — even if it was not entirely frivolous — then she properly faced a retrial; requiring a *third* trial due to an erroneous ruling as to frivolousness would be a bizarre remedy to cure a *double*-jeopardy-related error.

In sum, Appellant's failure to obtain an appellate stay of her retrial to allow review, before the retrial occurred, of her challenge to the trial court's ruling that her double jeopardy plea was frivolous renders that issue irrelevant. We need only decide whether Appellant's plea in bar was properly denied, as we have done in Division 2 above.

Judgment affirmed. All the Justices concur.

Decided March 27, 2015.

Murder. Clayton Superior Court. Before Judge Simmons.

Lloyd J. Matthews, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General, for appellee.