**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 1, 2021**

# In the Court of Appeals of Georgia

A20A1619. SANDERS v. THE STATE.

REESE, Presiding Judge.

James Russell Sanders appeals from the denial of his double-jeopardy plea in bar, arguing that the trial court erred when, during Sanders's jury trial for vehicular homicide and related charges, the court declared a mistrial instead of making an evidentiary ruling. Sanders asserts that, because no manifest necessity existed for a mistrial, he was entitled to a plea in bar as a matter of law. For the reasons set forth infra, we agree with Sanders, and we therefore reverse the trial court's order.

The facts relevant to this appeal are undisputed.[1] In October 2016, a pickup truck driven by Sanders crossed over the median in a four-lane highway and collided with a pickup truck driven by Christopher Holland, resulting in Holland's death. After Sanders was transported to the hospital for treatment for his own injuries, medical personnel discovered he was wearing three Fentanyl patches. Additionally, an analysis of Sanders's urine showed he had opiates, benzodiazepines, and barbiturates in his system at the time of the collision. Sanders was indicted for two counts of vehicular homicide in the first degree and a single count each of driving under the influence (less safe), reckless driving, and failure to maintain lane.

Prior to Sanders's August 2019 trial, the parties deposed Dr. Joseph Tobin with the understanding that at least some of his deposition testimony would be introduced into evidence at trial. Dr. Tobin, who was a board-certified orthopedic surgeon, had treated Sanders for shoulder issues since July 2013. Dr. Tobin testified that, on the morning of the collision, he saw Sanders at a 9:10 a.m. appointment, at which Sanders gave no indication that he was impaired. Dr. Tobin explained that Sanders had been

---

[1] See *Honester v. State*, 336 Ga. App. 166, 167 (784 SE2d 30) (2016) ("[I]n those cases where the relevant facts are undisputed and no question regarding the credibility of witnesses is presented, we review de novo the trial court's application of the law to undisputed facts.") (citation and punctuation omitted).

chronically taking narcotic pain medications since 2013. On cross-examination, Dr. Tobin opined that, based on his discussion with a colleague who specialized in pain management, Sanders "was a patient that ha[d] developed an incredible tolerance to pain medication."

Dr. Tobin further testified in his deposition that Sanders had come "to see [Tobin] in the first place . . . because [Sanders] had a seizure disorder where he would have seizures that were so violent that they would dislocate his shoulder." Tobin added that he had reviewed Sanders's post-accident hospital records, which noted Sanders's history of seizures. Tobin stated that his "understanding [was] that [Sanders] had a seizure that caused this car accident, and then even the day of [his hospital] admission[,] he had a second seizure." Based on Sanders's history and a review of the hospital records, Dr. Tobin opined "that this car accident was caused by the seizure and not by the fact that [Sanders] was on narcotic chronic pain management medicine."

The State did not file a motion in limine with respect to Dr. Tobin's deposition. Additionally, when the trial court contacted the parties a few days before trial and asked if there were any known evidentiary issues, the State did not respond. At the close of the first day of trial, however, the prosecutor sought to have the trial court

3

exclude Dr. Tobin's testimony that Sanders had a history of seizures; that Sanders had a seizure on the day of the accident; and that, in Tobin's opinion, the collision had been caused by the seizure. After argument, and with the court declining to make a ruling, and following a brief recess, the prosecutor and defense counsel agreed to exclude Dr. Tobin's statements on causation.

The following morning, before the jury was brought in to hear the second day of trial testimony, defense counsel moved to withdraw his stipulation. Counsel explained that he had entered into the stipulation only because he could not immediately locate the document in the voluminous medical records that supported both Dr. Tobin's statement that Sanders had a history of seizures and opinion that a seizure had caused the collision. During the recess, however, defense counsel had located the document in question, which had been authored by Sanders's treating physician at the hospital. The State objected to the defense motion to withdraw the stipulation. Rather than ruling on that motion or deciding whether any portion of Dr. Tobin's deposition was inadmissible, however, the trial court sua sponte declared a mistrial.

Specifically, the transcript reflects the colloquy:

4

THE COURT: . . . My office contacted both of you last Friday, and the question was, are there outstanding issues. Not a peep. Friday came —

[DEFENSE COUNSEL]: (Unintelligible.)

THE COURT: Listen to me. Not a peep. Friday came and went; Saturday; Sunday. Monday morning, same question put to both of you; not a peep. The first I heard of it was mid-afternoon, we've got a question about admissibility of deposition testimony. First time I hear. . . . There really is no stipulation in this deposition. As well, there are no preservations in this deposition. And it comes to me yesterday afternoon, mid-afternoon; what's going to be admitted and what's not. That's the reason why we spent probably an hour and a half or so reviewing it. [You] came to an agreement that was stipulated, which has only tried to be undone this morning. Given the confusion that everybody's in, The Court is going to declare a mistrial. Thank you.

[DEFENSE COUNSEL]: Thank you, Your Honor.

Although the transcript ends at this point, there appears to be no dispute that there was an outburst from Holland's family. According to Sanders, he "was told to leave the courtroom."[2] Later that same day, Sanders filed a written objection to the declaration of a mistrial. Shortly thereafter, he filed a plea in bar and motion to dismiss the case against him. The trial court denied Sanders's plea in bar and motion to dismiss, reasoning that the parties' failure either to stipulate as to the portions of

---

[2] Sanders also made this assertion in the trial court, in support of his plea in bar. Neither the trial court's order nor the State's brief contradicts this assertion.

5

Dr. Tobin's testimony that would be admitted or bring the matter to the court's attention prior to trial

> had essentially saddled the [trial c]ourt with the unsavory decision of having to choose between keeping a jury waiting while it reviewed the entire deposition of a treating physician line by line to determine what parts would be admissible or declaring a mistrial. After considering the interests of justice, and in fairness to both sides, [the c]ourt chose the latter.

Additionally, the trial court's ruling suggested that Sanders had consented to the mistrial by failing to make a timely objection. Specifically, the court noted that the recording of the proceeding "show[ed] that after the [c]ourt declared a mistrial[,] approximately 20 seconds of silence occur[red] prior to the outburst of the victim's family member. As such, [Sanders] had more than sufficient time to state his objection." Sanders appeals from this order.

> On appeal from the grant or denial of a double jeopardy plea in bar, we review the trial court's oral and written rulings as a whole to determine whether the trial court's findings support its conclusion. Where the evidence is uncontroverted and witness credibility is not an

issue, our review of the trial court's application of the law to the undisputed facts is de novo.[3]

"At the time an accused's jury is impaneled and sworn, jeopardy attaches, and the accused is entitled, under the double jeopardy provisions of both the State and Federal Constitutions, to have his trial proceed either to conviction or acquittal before that particular tribunal."[4] Given the importance of the constitutional right at stake, a trial judge contemplating the declaration of a mistrial "must always temper the decision whether . . . to abort a trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."[5] Accordingly, "to avoid barring a second trial, the court may declare a mistrial without a defendant's consent or over his objection only when taking all the circumstances

---

[3] *State v. Hill*, 333 Ga. App. 785 (777 SE2d 265) (2015) (citation and punctuation omitted).

[4] *Honester*, 336 Ga. App. at 169; accord *Harvey v. State*, 296 Ga. 823, 830 (2) (a) (770 SE2d 840) (2015).

[5] *Meadows v. State*, 303 Ga. 507, 511 (2) (813 SE2d 350) (2018) (citation and punctuation omitted).

into consideration, there is a manifest necessity for doing so, which means a high degree of necessity."[6]

"The appellate courts give great deference to the trial court's decision that there was a manifest necessity for a mistrial."[7] "In cases in which there is no manifest necessity for aborting a trial rather than using other less drastic remedies to cure problems, in the absence of defendant's motion for a mistrial, the granting of a mistrial is an abuse of discretion."[8] With these guiding principles in mind, we turn now to Sanders's claim of error.

1. Before analyzing whether there existed a manifest necessity for a mistrial in this case, we examine whether Sanders consented to a mistrial.[9] "[I]f a defendant consents to a mistrial, he may not later use the mistrial as the basis of a plea of double

---

[6] Id. (citations and punctuation omitted).

[7] *Bellew v. State*, 304 Ga. App. 529, 532 (1) (697 SE2d 249) (2010).

[8] *Haynes v. State*, 245 Ga. 817, 819 (268 SE2d 325) (1980).

[9] Although the trial court made no express finding that Sanders consented to the mistrial, its order implied such a finding. Specifically, as noted above, the trial court found that Sanders had a 20-second window between the court's declaration of a mistrial and the outburst from Holland's family.

8

jeopardy."[10] A defendant's consent to a mistrial may be express or implied.[11] In determining whether a defendant gave his implied consent to a mistrial, his failure to object timely is a factor to be considered.[12] "[T]here is no bright-line rule establishing that the absence of an objection[,]" standing alone, "automatically equates to consent in all cases."[13] Instead, our case law indicates that before we can infer a defendant's consent to a mistrial, the record must show that he had an opportunity to voice an objection before the mistrial was declared, but failed to do so.[14] Where a defendant

---

[10] *Bellew*, 304 Ga. App. at 532 (1) (citation and punctuation omitted).

[11] *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996).

[12] See id. at 305-306.

[13] *Brown v. State*, 354 Ga. App. 493, 499 (3) (841 SE2d 125) (2020) (physical precedent only).

[14] See *Johnson*, 267 Ga. at 305 (holding that the defendant impliedly consented to a mistrial where his co-defendant moved for a mistrial, and neither the defendant nor his counsel participated in the discussion concerning the motion); *State v. Stockhoff*, 333 Ga. App. 833, 838 (777 SE2d 511) (2015) (defendant gave his implied consent to a mistrial where discussion was held, the defendant failed to object despite having "ample opportunity" to do so, and defense counsel gave some indication he agreed with the motion); *Bellew*, 304 Ga. App. at 532-533 (1) (the trial court specifically asked whether the defendant was joining in the State's motion for a mistrial and defense counsel's response was to inquire about bond for his client; "[h]aving been given the opportunity to voice his objection and not voicing it," the defendant gave his implied consent to the mistrial); *Akery v. State*, 237 Ga. App. 549, 550 (515 SE2d 853) (1999) (consent implied when, asked about the State's motion for a mistrial, the defendant "stated repeatedly that he had no position on the

was afforded no such clear opportunity to object, however, his consent to a mistrial may not be inferred.[15]

Here, neither party moved for a mistrial, and the record shows no discussion at all between the court and the parties about the possibility of a mistrial. Moreover, at no point before the court made its declaration of a mistrial did the court ask Sanders or his attorney for the defense's position on the matter. Instead, as the parties were discussing how to handle an evidentiary issue, the court declared a mistrial sua sponte and without consulting either of the parties. Immediately after the court declared a mistrial, the court reporter ceased recording, indicating the proceedings had ended. No more than 20 seconds later, the outburst occurred. Nothing in the record disputes Sanders's assertion that he and his attorney were then escorted from the courtroom. Given these circumstances, we cannot conclude that Sanders impliedly consented to the mistrial.[16]

_____

motion.").

[15] See *Dotson v. State*, 213 Ga. App. 7, 10 (1) (443 SE2d 650) (1994) (no implied consent where "[t]he trial court gave [the defendant] no opportunity before declaring a mistrial either to object thereto or to present an argument as to [appropriate alternatives]") (punctuation and emphasis omitted).

[16] See *Dotson*, 213 Ga. App. at 10 (1); see also *Smith*, 263 Ga. at 783 & n. 2 (1) (no implied consent to a mistrial existed where the trial court asked defense counsel

2. We next address whether there existed a manifest necessity for a mistrial. In cases such as this one, involving no prosecutorial misconduct, "the trial court has broad discretion in deciding whether to grant a mistrial."[17] "That discretion, however, is not unbridled and it must be exercised carefully, particularly where the trial court is declaring a mistrial . . . sua sponte."[18]

In exercising its discretion, the trial court must do two things before declaring a mistrial. First, it must consider any other available and less drastic alternatives to the mistrial.[19] Second, in considering the viability of any alternatives, the trial court must consider, and give weight to, the defendant's constitutional right to have his trial

---

for response to the State's motion and defense counsel suggested alternatives to a mistrial).

[17] *Spearman v. State*, 278 Ga. 327, 329 (1) (602 SE2d 568) (2004) (citation and punctuation omitted).

[18] *Honester*, 336 Ga. App. at 170 (citation and punctuation omitted); see also *Renico v. Lett*, 559 U. S. 766, 774 (II) (130 SCt 1855, 176 LEd2d 678) (2010) (A trial court should exercise its discretion to declare a mistrial only "under urgent circumstances and for very plain and obvious causes[.]") (punctuation omitted); *Johnson*, 267 Ga. at 305 ("[T]he power of the trial judge to interrupt the proceedings on his own . . . motion by declaring a mistrial is subject to stringent limitations[.]") (citation and punctuation omitted).

[19] See *Harvey*, 296 Ga. at 832 (2) (a); see also *Haynes*, 245 Ga. at 819 (explaining that in light of the rule that only manifest necessity justifies a mistrial, "a consideration of alternative remedies is highly important").

completed before the impaneled jury.[20] When the record shows that there existed

reasonable alternatives to a mistrial or that the trial court failed to "care[fully] and

deliberate[ly] consider[] . . . the possible double jeopardy consequences, the court's

decision to terminate a trial cannot be sustained, and the Double Jeopardy Clause will

bar a retrial."[21]

Here, there was an obvious alternative to declaring a mistrial — the trial court

could have performed one of its essential and routine functions, and ruled on the

admissibility of the disputed testimony.[22] Moreover, the trial court's desire not to

keep the jury waiting while it reviewed Dr. Tobin's testimony and made a ruling did

not affect the feasibility or appropriateness of the obvious alternative to the mistrial.[23]

Requiring the jury to wait while the parties argue over an issue and the trial court

---

[20] *Honester*, 336 Ga. App. at 173.

[21] *Meadows*, 303 Ga. at 512 (2) (a).

[22] The trial court's order recognizes this alternative, stating that the parties' failure to agree on the admissibility of Dr. Tobin's testimony or seek some pretrial ruling of the same caused the court to declare the mistrial.

[23] We note that the deposition at issue was only 25 pages long, the disputed testimony consisted of eight lines found on two consecutive pages of the deposition, and the trial court had already heard the parties' arguments as to the admissibility of the disputed testimony.

makes a ruling is not unusual. Such an alternative, even if it involves sending the jury home for a day, is preferable to a mistrial.[24]

Given that the trial court had an obvious, feasible alternative to declaring a mistrial, and given that it gave no consideration to Sanders's double-jeopardy rights before declaring a mistrial, the court abused its discretion in terminating Sanders's trial, and it further erred in denying his plea in bar.[25] Accordingly, we reverse the order of the trial court.

*Judgment reversed. Markle and Colvin, JJ., concur.*

---

[24] See *Leonard v. State*, 275 Ga. App. 667, 668 (621 SE2d 599) (2005) (holding that the trial court acted appropriately in sending deadlocked jury home for the day after it was reported that "deliberations were becoming heated"); see also *Harvey*, 296 Ga. at 832 (2) (a) (If a trial court is contemplating a mistrial, it should call for a recess, if necessary, to consider alternatives and "guard against hasty mistakes[.]") (punctuation omitted).

[25] See *Meadows*, 303 Ga. at 516 (2) (e); *Haynes*, 245 Ga. at 819.